IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 7, 2001 Session

## HOPEWELL BAPTIST CHURCH v.
## SOUTHEAST WINDOW MANUFACTURING CO., LLC., ET AL.

### Appeal from the Circuit Court for Blount County
### No. L-11975     W. Dale Young, Judge

### FILED JUNE 25, 2001

### No. E2000-02699-COA-R3-CV

Hopewell Baptist Church brought suit against defendant Southeast Window Mfg. LLC., alleging that it was a successor corporation and liable under a contractual warranty given by its predecessor. The Trial Court ruled that the defendant was a successor corporation and had expressly or impliedly assumed the obligations under its predecessor's warranty through the acts of its agent. We reverse.

### Tenn. R. App. P. 3 Appeal As of Right;
### Judgment of the Circuit Court Reversed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Dudley W. Taylor, Knoxville, Tennessee, for the Appellant Southeast Window Manufacturing, LLC.

Melanie E. Davis, Maryville, Tennessee, for the Appellee Hopewell Baptist Church.

## OPINION

## Background

This suit was originally filed in the General Sessions Court for Blount County. Hopewell Baptist Church ("Plaintiff") sued both Southeast Window Mfg. LLC. ("Southeast LLC"), and Huskey Aluminum, Inc. ("Huskey"). Plaintiff claimed that it purchased windows from Huskey and that the windows were defective. Plaintiff spent $8,700.00 in replacement costs. Huskey did not appear in General Sessions Court. Judgment for $8,700.00 was entered in the General Sessions Court against both defendants. Southeast LLC appealed the judgment against it to the Circuit Court for Blount County. The judgment against Huskey was not appealed.

The initial discussions leading to the sale of the windows were between Plaintiff's representatives and Mr. Bob Talbott ("Talbott"), an employee of Huskey. Talbott was assisted by Mr. Ray Phillips ("Phillips") who eventually prepared the contract. Phillips was a commissioned sales agent and factory representative who worked as an independent contractor for Huskey. Plaintiff entered into a contract with Huskey dated September 25, 1997. This contract was signed by Phillips on behalf of Huskey, and was signed by Reverend Kenneth Holder ("Rev. Holder") and others on behalf of Plaintiff.

Huskey utilized the trade name Southeast Window Manufacturing Company ("Southeast Company") in its sale and installation of Komcraft vinyl replacement windows. When the Komcraft windows purchased by Plaintiff were installed, a warranty was delivered to Plaintiff by Phillips. The warranty was made by Southeast Company. Plaintiff received an invoice dated January 14, 1998, from Southeast Company for the remaining balance owed on the purchase. Huskey employees completed the installation of the windows by mid-January of 1998.

Prior to and during the time that Plaintiff purchased the windows, Huskey was experiencing severe financial difficulties which were made worse when it was audited by the Tennessee Department of Revenue, resulting in a sales and use tax deficiency of more than $80,000.00. Huskey's employees, including Ms. Susan Riggs ("Riggs"), were informed that Huskey would not survive. Riggs was not a shareholder of Huskey but had loaned Huskey money. Riggs' only source of income was her wages from Huskey.

Because of the impending demise of Huskey, Riggs undertook to negotiate the purchase of certain assets of Huskey with the assistance of her mother and other family members. As a result of this process, Southeast LLC came into existence on April 30, 1998. Southeast LLC later purchased certain assets of Huskey for $5,000.00. The closing statement indicates that Southeast LLC assumed only those liabilities secured by UCC-1 filings on these particular assets. In other words, the assets purchased from Huskey were bought subject to existing security interests. The Tennessee Department of Revenue released its lien on those assets being purchased, in exchange for the entire $5,000.00 purchase price being paid towards Huskey's tax liability.

Although the trade name used by Huskey for the installation of Komcraft windows was similar to Defendant Southeast LLC's corporate name, Defendant Southeast LLC neither sold anything to Plaintiff nor performed any installation of the windows Plaintiff purchased from Huskey. Southeast LLC did not exist until after the sale and installation of the windows was completed. Neither Talbott nor Phillips have been employees of Southeast LLC, although Phillips performs services as an independent contractor for Southeast LLC.

In March of 1998, Plaintiff began experiencing problems with the windows and contacted Phillips, who went to the church to inspect the windows. Phillips replaced one of the windows. This was done while Huskey was still in existence. After Huskey went out of business and Defendant Southeast Window Mfg. LLC came into existence, more problems with the windows occurred. Rev. Holder attempted to contact Huskey, but the phone lines had been disconnected. Rev. Holder eventually was able to get in touch with Phillips. In June of 1998, Phillips sent an undated letter to the manufacturer of the windows located in Florida notifying that company of the problems. The letterhead used by Phillips stated "Southeast Window Company LLC" which was neither the correct trade name which had been used by Huskey (i.e. Southeast Window Manufacturing Company) nor the correct legal name of Defendant Southeast Window Mfg. LLC. The letter stated, among other things, that "We purchased" the windows and "We used" the windows at Hopewell Baptist Church in Maryville.

After the initial discussions between Plaintiff and Talbott, the only person with whom Plaintiff had any contact was Phillips. This included discussions which occurred both before and after Huskey went out of business, and after Southeast LLC had been formed.

At trial, Rev. Holder testified that after April 30 (the date Southeast LLC was established), Phillips never said anything to him about a new company being formed. Rev. Holder stated that Phillips told him he had a lifetime warranty, although he did not say on what date he was told this. Rev. Holder was then asked by Plaintiff's attorney if Phillips said anything about the warranty, and he responded "No, ma'am." Prior to Rev. Holder's contacting Plaintiff's attorney at which time it was learned that Southeast LLC would not honor the warranty provided by Huskey and/or Southeast Company, there was never any discussion about the warranty. Specifically, Rev. Holder testified:

> Q.  Had you ever heard any discussion about maybe the warranty is good, maybe it isn't, before that?
>
> A.  No ma'am. Warranty was never mentioned. As far as being denied, it was always indicated to me that the warranty was going to be honored. . . .

It is clear from the testimony that the warranty was never expressly mentioned and Rev. Holder assumed that the warranty would be honored because Phillips had repaired one window

and had written the company in Florida which had manufactured the windows discussing the problems. This conclusion is shown by later testimony of Rev. Holder as follows:

> Q. Did [Phillips] tell you expressly after April 30[th] that the warranty would be honored?
>
> A. I can't say that he told me that it would be honored, but he never did deny the honor of the warranty. The warranty was not really a discussion at any time between the 2 of us. He had never denied in any way that they wouldn't. Every indication to me that he was leaving was that they would take care of the windows. They would be repaired.
>
> * * * *
>
> Q. You really didn't discuss [the warranty], did you?
>
> A. No. There was no, I felt that there was no need for discussion of the warranty. Because we had never been led to believe that there was going to ever be anything but them honoring the warranty.
>
> Q. You called and said, we've got a problem here with [these] windows, let's do something about it. And somebody came out and tried to do something?
>
> A. That's right.

Mr. Floyd Harris ("Harris"), a member of Hopewell Baptist Church, testified. Harris' testimony was consistent with that of Rev. Holder to the effect that the warranty was never mentioned, and he just assumed it would be honored.

Ms. Linda Whitehead ("Whitehead") also testified. Whitehead was on the church committee that was in charge of having the windows purchased and installed. Whitehead stated that shortly after sending a letter to Southeast LLC in October of 1998:

> [Phillips] explained to me that Husky (sic) was no longer in business. The company had went, his words were defunct is how he explained the company and explained that some of the employees then formed Southeast. They came into business. They pooled their moneys together. And at that point he said, you know, even though we had made our down payment to Husky (sic) that they took over and they wanted to help us with the situation or as far as installing the windows for us and taking over at the point. And one thing he said,

-4-

they wanted to do the Christian thing and didn't want to leave us hanging is why they took over at that point.

Phillips testified that he worked as an independent contractor for Huskey and was paid on a commission basis. He also was an independent contractor for Southeast LLC and did not have the power to enter into contracts without the approval of Southeast LLC. Phillips stated that the windows were ordered from Dimensional Plastics in Florida. The payments made by Plaintiff were paid to Huskey or its division before it went out of business. When Plaintiff first began experiencing problems and one of the windows was replaced, Huskey was still in business. In May when further problems developed, Phillips received a phone call from Rev. Holder who stated that he had problems getting in touch with him (Phillips) because the phones had been disconnected. Phillips claims he told Rev. Holder at that point that Huskey was no longer in business and several employees had started Southeast LLC, a new business. Rev. Holder denies he was told this. Phillips testified that even though Huskey's warranty did not apply to Southeast LLC, he attempted to help Plaintiff by contacting via letter the manufacturer of the windows. He did not ask permission to send the letter from anyone connected with Southeast LLC. Phillips claimed he told Rev. Holder that Plaintiff did not have a warranty with Southeast LLC but he would try and assist Plaintiff anyway. Rev. Holder denies this as well.

The Trial Court requested both parties submit proposed findings of fact and conclusions of law. The Trial Court adopted those submitted by Plaintiff. The Trial Court concluded that after the dissolution of Huskey and the formation of Southeast LLC, Phillips acted as Southeast LLC's agent. The Trial Court also concluded that Southeast LLC was a successor corporation to Huskey because Huskey transferred some or all of its assets to Southeast LLC. The Trial Court determined that after the formation of Southeast LLC, Phillips made assertions that the warranty previously provided by Huskey would be honored and Plaintiff would be taken care of and the windows repaired. According to the Trial Court, no mention was made by Phillips that a new entity had been formed until October of 1998. Based on these findings, the Trial Court ruled that Southeast LLC was a successor corporation to Huskey and had expressly or impliedly agreed to assume the predecessor's obligation under the warranty. Judgment was entered against Southeast LLC in the amount of $9,960.00. Southeast LLC appeals this judgment.

## Discussion

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

On appeal, Plaintiff asks this Court to adopt the rule of law set forth by the United States District Court for the Middle District of Tennessee in *Bonee v. L & M Construction*

*Chemicals*, 518 F. Supp. 375 (M.D. Tenn. 1981). In *Bonee*, the District Court set forth what it refers to as the "traditional rule of nonliability of successor corporations":

> The traditional rule is that when one company transfers some or all of its assets to another company the successor is not liable for the debts of the predecessor except when:
>
>> "(1) The purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts . . . . A fifth exception, sometimes incorporated . . . , is the absence of adequate consideration for the sale or transfer."
>
> 1 L. Frumer & M. Friedman, Products Liability § 5.06(2), at 70.58(2) - (3) (1981) . . . (quoting *McKee v. Harris Seybold Co.*, 109 N.J. Super. 555, 264 A.2d 98 (1970)).

Plaintiff claims that the first exception to the rule announced in *Bonee* applies and, therefore, the decision of the Trial Court should be affirmed. Initially, we note that the District Court in *Bonee* was applying the substantive law of Ohio and did not state that the foregoing was the law in Tennessee. However, this rule of law was cited with approval in an unreported decision of this Court in *Gas Plus of Anderson County, Inc. v. Arowood*, 1994 WL 465797, No. 03A01-9311-CH-00406 (Tenn. Ct. App., Aug. 30, 1994). We will, therefore, apply this "traditional rule." The issue then is whether Southeast LLC expressly or impliedly agreed to assume the liability for the warranty given by Huskey and/or Southeast Company.

Based on the unequivocal testimony of Rev. Holder and the other church members, it is clear that neither Phillips nor anyone connected with Southeast LLC ever expressly assumed the contractual obligations under the warranty. The Trial Court's conclusion that there was an express assumption of the obligations under the warranty by Southeast LLC is contrary to the preponderance of the evidence, and the Trial Court erred in this conclusion.

Tennessee recognizes two types of implied contracts, contracts implied in fact and contracts implied in law, also known as quasi contracts. *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997). Contracts implied in fact arise under circumstances which show mutual assent or intent to contract. This cannot be accomplished by the unilateral action of one party. *Id*. There must also be consideration. *See, e.g., Allman v. Boner*, 1993 WL 541111 at *2, No. 01A01-9306-CH-00270 (Tenn. Ct. App., Dec. 29, 1993)("A contract may be expressed or implied, written or oral, but to be an enforceable contract it must, among other elements, result from a meeting of the

minds in mutual assent to terms, must be based upon consideration, and must be sufficiently definite."). One reason consideration is required is to prevent the enforcement of gratuitous promises. *Id.*

In the present case, there is nothing to support the conclusion that Southeast LLC undertook any actions which would show it intended to assume the obligations contained in Huskey's warranty. The unilateral actions of Phillips, an independent contractor, in trying to do the "Christian" thing and assist Plaintiff with the problems it was experiencing with the windows does not create mutual assent to contract on the part of Plaintiff and Southeast LLC. At best, Plaintiff's actions in contacting Phillips in order to have the windows fixed show an intent to hold Huskey and/or Southeast Company to the warranty that *they* provided. Phillips' actions in attempting to correct the problem, including his letter to the manufacturer of the windows, were simply a gratuitous effort.

Our conclusion is in accord with *Gas Plus of Anderson County, Inc. v. Arowood*, 1994 WL 465797, No. 03A01-9311-CH-00406 (Tenn. Ct. App., Aug. 30, 1994). In *Gas Plus*, the plaintiff argued, among other things, that the liability under a requirements contract with defendant Arowood had been assumed by defendant Arrow Oil Company. Plaintiff argued that Arowood sold or otherwise transferred certain business assets to Arrow Oil and by virtue of this transfer, "Arrow Oil was charged with the knowledge of Arowood's obligation under the requirements contract, and thereby assumed all of Arowood's obligations." *Id.* at *2. Arrow Oil denied it had assumed liability with regard to the contract and denied being a party to the contract. In ruling that the Chancellor had properly dismissed the claim against Arrow Oil, this Court stated that the "sale of assets from one individual or company to another individual or company does not make the latter liable for the debts and liabilities of the former." *Id.* at *3. In order for the purchaser to be liable for the debts and liabilities of the seller, there must be some express or implied undertaking in the form of: "(1) an express or implied assumption of the debts; (2) the transaction amounting to a consolidation or merger of the seller and purchaser; (3) the purchaser being a mere continuation of the seller; or (4) a fraudulent transaction." *Id.* (citations omitted). This Court noted that the record was noticeably deficient of any proof that Arrow Oil had undertaken to assume responsibility under the contract. It was also pointed out that:

> Furthermore, T.C.A. § 29-2-101(2) provides that:
>
> Writing required for action. – No action shall be brought …
>
> (2) Whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;
>
> * * *

> unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.
>
> T.C.A. § 29-2-101(2)…. To make this statute applicable Gas Plus must have presented evidence that Arrow Oil made a special promise to answer for the debt of Arowood. Unless and until there has been such a promise, there is no liability on the part of Arrow Oil….

*Gas Plus of Anderson County, Inc. v. Arowood*, 1994 WL 465797 at \*4, No. 03A01-9311-CH-00406 (Tenn. Ct. App., Aug. 30, 1994). We conclude that there was no implied contract in fact between Plaintiff and Southeast LLC.

Contracts implied in law are created by law without the assent of the party to be bound. *Angus*, 968 S.W.2d at 808. A party seeking to recover under this theory must prove:

> A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.

*Angus*, 968 S.W.2d at 808 (quoting *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 57, 407 S.W.2d 150, 155 (1966)). Here, there was no benefit whatsoever conferred by Plaintiff upon Southeast LLC. Any consideration for the windows and warranty was conferred directly upon Huskey and/or Southeast Company. At the time any benefit was conferred by Plaintiff, Southeast LLC did not exist. Since there is no consideration, there is no contract implied in law or in fact.

It is clear that there was an express warranty between Plaintiff and Huskey d/b/a Southeast Company. Several months after this warranty was given, Huskey became defunct. Approximately $5,000.00 of its assets were purchased by former Huskey employees who started their own business. There is nothing in the record to indicate that this was a merger, a fraudulent transaction, or undertaken to avoid any of Huskey's obligations. After Southeast LLC was created, more problems arose and Phillips attempted to correct the problems. He was unsuccessful. Neither Southeast LLC nor Phillips ever expressly agreed to assume the warranty provided by Huskey and Plaintiff's representatives claim that it never even was mentioned. The preponderance of the evidence is against any finding by the Trial Court that there was an express or implied assumption by Southeast LLC of this warranty liability. To hold that Phillips' gratuitous attempts to assist Plaintiff created either an express or implied contractual obligation on the part of Southeast LLC to assume the warranty provided by Huskey constitutes reversible error.

-8-

## Conclusion

The judgment of the Trial Court is reversed. This matter is remanded to the Trial Court for such further proceedings as may be necessary, if any, consistent with this Opinion, and for collection of the costs below. Costs of this appeal are taxed to the Appellee, Hopewell Baptist Church.

_____
D. MICHAEL SWINEY, JUDGE