Betty NELSON, Appellee,

v.

WAL–MART STORES, INC., Appellant.

Supreme Court of Tennessee,
at Nashville.

Nov. 29, 1999.

Jeffrey P. Boyd, B. Chadwick Rickman, Allen, Kopet & Boyd, PLLC, Jackson, for appellant.

Patrick Johnson, Johnson, Scruggs & Barfield, Nashville, for appellee.

## OPINION

ANDERSON, C.J.

We granted the motion to review this workers' compensation case to clarify the circumstances under which a worker's award limited by the provisions of Tenn. Code Ann. § 50–6–241 (1999) [1] may exceed the statutory caps pursuant to Tenn.Code

---

1. This case involves Tenn.Code Ann. § 50–6–241(a)(1), (b). Subsection 241(a)(1) governs cases in which there has been a meaningful return to work and states in pertinent part: "where an injured employee is eligible to receive any permanent partial disability benefits, ... and the pre-injury employer returns the employee to employment ..., the maximum permanent partial disability award that the employee may receive is two and one half (2½) times the medical impairment rat-

ing...." *Id.* Subsection 241(b), governing cases in which there has not been a meaningful return to work, states in pertinent part: "where an injured employee is eligible to receive permanent partial disability benefits, and the pre-injury employer does not return the employee to employment ..., the maximum permanent partial disability award that the employee may receive is six (6) times the medical impairment rating." *Id.*

Ann. § 50–6–242 (1999).[2] In resolving this issue, we also consider whether there was a "meaningful return to work" as contemplated by Tenn.Code Ann. § 50–6–241(a)(1).

At a bench trial in the Montgomery County Circuit Court, the parties stipulated a medical impairment rating of 8% to the body as a whole. The trial court determined that there had been a meaningful return to work and concluded that Tenn. Code Ann. § 50–6–241(a)(1) applied, limiting the worker's recovery to two and one half times the impairment rating, or 20%. The court further concluded, however, that Tenn.Code Ann. § 50–6–242 applied and that the statutory caps should be lifted because of the worker's age, lack of education and job skills. The trial court then found that the worker had suffered a permanent partial disability of 60%.

On appeal, the Special Workers' Compensation Appeals Panel found that there had been no meaningful return to work, that Tenn.Code Ann. § 50–6–241(b) applied instead, and that the worker was therefore entitled to six times the medical impairment rating, or 48%. The Panel also found that Tenn.Code Ann. § 50–6–242 applied so that the award could exceed the statutory caps. The Panel then affirmed the trial court's award of 60% permanent partial disability.

We granted the motion for review of the Panel's decision and agree with the Panel's result that Tenn.Code Ann. § 50–6–241(b) applies because there was no meaningful return to work; that Tenn.Code Ann. § 50–6–242 applies as well to allow an award in excess of the statutory cap of six times the medical impairment rating; and that the evidence does not preponderate against the trial court's finding of 60% permanent partial disability.

The Panel, however, erred by stating that Tenn.Code Ann. § 50–6–242 applies to both § 50–6–241(a)(i) and § 50–6–241(b) when under the plain language of the statute, it does not apply to Tenn.Code Ann. § 50–6–241(a)(1) and does apply to Tenn. Code Ann. § 50–6–241(b). Accordingly, we affirm the Special Workers' Compensation Appeals Panel's judgment as modified to reflect that this case is governed by Tenn.Code Ann. § 50–6–241(b) rather than Tenn.Code Ann. § 50–6–241(a) and that Tenn.Code Ann. § 50–6–242 by its specific language applies only to Tenn.Code Ann. § 50–6–241(b).

## BACKGROUND

Betty Nelson, age sixty-seven, worked as a sales associate for Defendant Wal–Mart when she fell while assisting another employee move a rolled-up rug. Nelson suffered a broken hip from the fall.

The day after Nelson's fall, she was transported to the emergency room where Dr. Steve McLaughlin performed hip surgery. Dr. McLaughlin treated Nelson following the surgery, and he testified that Nelson had suffered a 20% impairment to the lower extremity. The parties agree that this converts into an impairment of 8% to the body as a whole. Dr. McLaughlin imposed restrictions upon Nelson from standing for more than forty-five minutes without taking a fifteen-minute break, from lifting over ten to fifteen pounds on a frequent basis, and from ever lifting over twenty pounds. He recommended that Nelson attempt to return to Wal–Mart and work a four-hour day with the restriction that she take "frequent breaks—setting [sic] and standing."

Following Dr. McLaughlin's recommendation, Nelson received a letter from Wal–Mart offering her a position in the fitting

---

**2.** Section 242 allows the trial court to exceed the caps in certain cases if the court finds by clear and convincing evidence that three of the four enumerated factors apply: "(1) The employee lacks a high school diploma or general equivalency diploma ...; (2) The employee is fifty-five (55) years of age or older; (3) The employee has no reasonably transferable job skills from prior vocational background and training; and (4) The employee has no reasonable employment opportunities available locally...." *Id.*

room answering the telephone. Nelson accepted Wal–Mart's offer and returned to work a four-hour shift on two consecutive days, April 30 and May 1, 1996. Nelson's work in the fitting room, however, required her to constantly stand up and sit down answering the phone and tending to unwanted merchandise customers would leave in the fitting room. Moreover, Nelson said that the only chair in the fitting room was a tall, unsturdy chair that had a sign taped to the wall behind it warning that no one should sit in the chair because it could fall. According to Nelson, Wal–Mart made no attempts to accommodate her need to take frequent breaks, and Nelson's attempts to fulfill the job requirements without accommodations rendered her both mentally and physically exhausted. Consequently, Nelson did not return to work at Wal–Mart.

Much later, Wal–Mart offered the position of door greeter, but the offer was made almost a year after Nelson had worked her last shift at Wal–Mart and after the present litigation was filed and preparation for trial had begun, approximately five months before trial.

Both Nelson and her daughter, Joan Cato, testified that the injury has been physically and emotionally devastating to Nelson, affecting her ability to walk and care for herself. Dr. Gordon Doss, an occupational expert who evaluated Nelson to assess her ability to work in light of her injury, testified at trial that Nelson had no reasonable employment opportunities. He further testified that at most Nelson could perform part-time sedentary work and that she had no transferable job skills.

It was undisputed at trial that Nelson had previously worked for Acme Boot Company for forty-seven years as an unskilled laborer and that she had completed only the ninth grade of high school and had not obtained her GED, nor had she any further education or specialized training.

After a bench trial, the trial court found that:

Given the evidence, it does appear that it would be reasonable to expect the Plaintiff to try the job of greeter for the Defendant. Therefore, the Court finds that under the facts of this case, T.C.A. § 50–6–241(a)(1) would apply, limiting the Plaintiff's recovery to two and one-half (2½) times her impairment rating.

The court went on to conclude that Tenn. Code Ann. § 50–6–242 applied and that therefore, "Plaintiff's recovery is not limited to the multipliers of her impairment rating" and awarded 60% permanent partial disability.

The Special Workers' Compensation Appeals Panel found that there had been no "meaningful return to work," as contemplated by Tenn.Code Ann. § 50–6–241(a)(1). The Panel therefore found that Tenn.Code Ann. § 50–6–241(b) should apply, limiting the award to six times the medical impairment rating. The Panel then found that the exception for age, lack of education and job skills set out in Tenn. Code Ann. § 50–6–242 also applied and that the statutory cap of six times the medical impairment of 8%, or 48%, could be exceeded. It then affirmed the trial court's award of 60% permanent partial disability.

We granted Wal–Mart's motion for review.

## ANALYSIS

### Standard of Review

■ We begin our analysis by noting the applicable standard of review. In the present case, we are concerned primarily with the construction of a statute and the application of the law to the facts, and it is well settled that we review such questions of law de novo with no presumption of correctness given the lower courts' judgments. E.g., Beare Co. v. Tennessee Dep't of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993). We review questions of fact "de novo upon the record of the trial court, accompanied by a presumption of the cor-

rectness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R.App. P. 13(d). The extent of vocational disability is a question of fact to be determined from all the evidence, including lay and expert testimony. *E.g., Collins v. Howmet Corp.*, 970 S.W.2d 941, 943 (Tenn.1998). Factors to be considered in determining the extent of vocational disability include the employee's job skills and training, education, age, extent of anatomical impairment, duration of impairment, local job opportunities, and the employee's capacity to work at the kinds of employment available to her in her disabled condition. *Id.* The employee's own assessment of her physical condition and resulting disability is competent testimony that should be considered as well. *Id.*

### Trial Court's Finding of Disability

■ With the above principles in mind, we consider whether the evidence preponderates against the trial court's finding of permanent partial disability to the body as a whole. The worker, Nelson, argues that the proof establishes a permanent total disability. The test of whether an employee is permanently totally disabled requires an inquiry into whether the employee is *"totally incapacitate[d]* ... from working at an occupation which brings the employee an income...."* Tenn.Code Ann. § 50–6–207(4)(B) (1999) (emphasis added). As pointed out by Nelson, Dr. Doss testified that she has no reasonable employment opportunities. He further testified, however, that Nelson was capable of performing part-time sedentary work, which Dr. Doss defined as work which would allow Nelson to sit as needed and which would not exceed forty hours per week. As noted by the Panel, Dr. Doss's testimony that Nelson was limited to part-time sedentary work is consistent with Dr. McLaughlin's limitations that Nelson could only work a job where she would be free to take a fifteen minute break for every forty-five minutes she stood.

Neither Dr. McLaughlin nor Dr. Doss testified that Nelson would be unable to perform the job of a door greeter given these restrictions. In our view therefore, the evidence does not establish that Nelson's injury "totally incapacitates" her from "working at an occupation which brings ... an income." Accordingly, we conclude that the evidence does not preponderate against the trial court's finding of permanent partial disability.

### Meaningful Return to Work

■ We next consider whether under the facts of this case there was a "meaningful return to work" as contemplated by Tenn.Code Ann. § 50–6–241. Subsection 241(a)(1) governs awards in cases where there has in fact been a "meaningful return to work." *Newton v. Scott Health Care Ctr.*, 914 S.W.2d 884, 886 (Tenn.Sp.Workers Comp.1995). Subsection 241(a)(1) states in pertinent part:

> [W]here an injured employee is eligible to receive any permanent partial disability benefits, ... and *the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury,* the maximum permanent partial disability award that the employee may receive is two and one half (2½) times the medical impairment rating....

*Id.* (emphasis added). Subsection 241(b), however, governs awards in cases in which there has been no "meaningful return to work." This subsection states in pertinent part:

> [W]here an injured employee is eligible to receive permanent partial disability benefits, and *the pre-injury employer does not return the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury,* the maximum permanent partial disability award that the

employee may receive is six (6) times the medical impairment rating....

*Id.* (emphasis added).

We have previously held that to determine whether there has been a meaningful return to work, the court's inquiry must focus on "the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work." *Newton,* 914 S.W.2d at 886. We further reasoned:

> If the offer from the employer is not reasonable in light of the circumstances of the employee's physical ability to perform the offered employment, then the offer of employment is not meaningful .... The resolution of what is reasonable must rest upon the facts of each case and be determined thereby.

*Id.* (emphasis added). The trial court determined that "it would be reasonable to expect the Plaintiff to try the job of greeter for the Defendant" and consequently found that Nelson's award was governed by Tenn.Code Ann. § 50–6–241(a)(1). The Panel disagreed, however, noting that Nelson "did return to work but was unable to perform her assigned duties and quit."

We conclude that the Panel correctly reversed the trial court's finding that there had been a meaningful return to work. The record indicates that Nelson returned to work following Wal–Mart's first offer, that Wal–Mart knew of Nelson's limitations at that time, that Wal–Mart made no effort to accommodate her need to take frequent breaks and, in fact, warned employees not to sit in the only chair in the fitting room. We reject Wal–Mart's argument that Nelson was unreasonable in failing to respond to Wal–Mart's offer of the people greeter position when it came a full year after Nelson quit, after litigation had commenced, and during preparation for trial, only five months before trial.

In our view, Wal–Mart's offers were "not reasonable in light of the circumstances of the employee's physical ability to perform the offered employment," *Newton,* 914 S.W.2d at 886. Accordingly, we find that the evidence preponderates against the trial court's finding that there was a "meaningful return to work" and thus conclude that Tenn.Code Ann. § 50–6–241(b) governs Nelson's award.

### Application of Tenn.Code Ann. § 50–6–242

We now turn to the lower courts' application of Tenn.Code Ann. § 50–6–242. This section states that:

> the trial judge may award employees permanent partial disability benefits, not to exceed four hundred (400) weeks, in appropriate cases where permanent medical impairment is found *and the employee is eligible to receive the maximum disability award under § 50–6–241(a)(2) or (b).* In such cases the court, on the date of maximum medical improvement, must make a specific documented finding, supported by clear and convincing evidence, of at least three (3) of the following four (4) items:
>
> (1) The employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade eight (8) level;
>
> (2) The employee is fifty-five (55) years of age or older;
>
> (3) *The employee has no reasonably transferable job skills from prior vocational background and training;* and
>
> (4) The employee has no reasonable employment opportunities available locally considering the employee's permanent medical condition.

*Id.* (emphasis added).

Wal–Mart first argues that the trial court erred in considering the application of Tenn.Code Ann. § 50–6–242 after finding that Nelson's award was governed by Tenn.Code Ann. § 50–6–241(a)(1). We agree. "When the words of a statute are plain and unambiguous, the assumption is that the legislature intended what it wrote and meant what it said." *McClain v. Hen-*

**631**

*ry I. Siegel Co.,* 834 S.W.2d 295, 296 (Tenn. 1992) (citations omitted). By its plain language, § 242 makes clear that it only applies to an award under § 241(a)(2) or (b) where there has been a loss of employment or no meaningful return to work. *See Davis v. Reagan,* 951 S.W.2d 766, 768 (Tenn.1997) ("[I]f the claim does not fall within the purview of § 50–6–241(a)(2) or (b), courts simply cannot proceed to § 50–6–242."). The trial court erred in considering the application of § 242 after it had found that there was a meaningful return to work and that Tenn.Code Ann. § 50–6–241(a)(1) governed Nelson's award. Unfortunately for Wal–Mart, the trial court's error in applying § 242 stems from its erroneous finding that this case is governed by § 241(a)(1) rather than § 241(b), to which § 242 does apply.

▮ Wal–Mart argues, however, that the evidence preponderates against the trial court's factual findings under § 242(3). Wal–Mart concedes that Nelson has no high school education or GED and is over age 55. *See* Tenn.Code Ann. § 50–6–242(1), (2). Wal–Mart maintains, however, that Nelson has "reasonably transferable job skills." Tenn.Code Ann. § 50–6–242(3). Dr. Doss testified that Nelson had no such skills, and Wal–Mart offered no expert evidence to the contrary. We therefore reject Wal–Mart's argument that the evidence preponderates against the trial court's factual findings under § 242(3).

### CONCLUSION

We conclude that there was no meaningful return to work and that the trial court erred in applying Tenn.Code Ann. § 50–6–241(a)(1) rather than Tenn.Code Ann. § 50–6–241(b). We further conclude that the age, education, and job skills provisions of Tenn.Code Ann. § 50–6–242 apply to allow an award in excess of the statutory cap of six times the medical impairment in § 241(b), or 48%, and that the evidence does not preponderate against the trial court's findings under § 242 and the finding of 60% permanent partial disability.

Accordingly, we affirm the Panel's judgment as modified. Costs of appeal shall be taxed against the appellant for which execution shall issue if necessary.

DROWOTA, BIRCH, HOLDER, BARKER, JJ., concur.