# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 3, 2001 Session

## DOROTHY WILKINS v. THE KELLOGG COMPANY

## Appeal from the Circuit Court for Shelby County
### No. 91639T.D.   John R. McCarroll, Judge

---

## No. M1999-00676-SC-R3-CV - Filed July 3, 2001

---

This workers' compensation case presents the question of how a "temporary partial disability" benefits award, as defined in Tennessee Code Annotated section 50-6-207(2), is calculated. The trial court held that an award is calculated based on the employee's "average weekly wage," which is the measure of benefits for the other categories of disability listed in the Workers' Compensation Law ("temporary total disability," "permanent total disability," and "permanent partial disability"). The employer appealed this decision to the Special Workers' Compensation Appeals Panel. The case was transferred to the full Supreme Court before the Panel handed down its decision. We now reverse the trial court and hold that the express terms of the statute indicate that a temporary partial disability award has a unique method of calculation, based on "the difference between the wage of the worker at the time of the injury and the wage such worker is able to earn in such worker's partially disabled condition." Tenn. Code Ann. § 50-6-207(2). This method does not include the average weekly wage definition. Under the correct calculation, the plaintiff in this case is not entitled to any temporary partial disability benefits. The award of $3,258.20 is accordingly reversed and the cause remanded to the trial court.

### Appeal pursuant to Tenn. Code Ann. § 50-6-225(e); Judgment of the
### Circuit Court Reversed and Remanded

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which , E. RILEY ANDERSON, C.J., and JANICE M. HOLDER, J., joined. ADOLPHO A. BIRCH, JR., filed a dissenting opinion in which WILLIAM M. BARKER, joined.

Larry E. Killebrew and Brett T. Parks, Memphis, Tennessee, for the appellant, The Kellogg Company.

B. J. Wade, Memphis, for the appellee, Dorothy Wilkins.

# OPINION

The employee, Dorothy Wilkins ("Wilkins"), worked for twenty-six years at the Kellogg Company's ("Kellogg") cereal manufacturing plant. She performed a variety of jobs, including packaging, assembly line work, operating heavy equipment, and filling in for other employees when they were absent. She earned $21.52 per hour. Since she typically worked sixty hours per week, which includes twenty overtime hours (paid out at an increased hourly wage), her average weekly wage was $1,433.82.

On March 26, 1997, Wilkins injured her right shoulder while washing some pipes at the plant, which caused her to miss two months of work. She returned to the plant at the end of July and was placed on a "light duty" work program, which imposed certain restrictions on her weight lifting and overhead movements. She had surgery a few weeks later, causing her to miss more work, but she soon resumed her light duty routine. Eventually she recovered and was able to perform her normal work responsibilities.

The parties agree that Wilkins worked on light duty status for forty-three days after her injury and that during this time she was "temporarily partially disabled" within the meaning of the Workers' Compensation Law. They also agree that during these forty-three days she only worked forty hours per week, pursuant to a union contract that prohibited light duty employees from working overtime. Kellogg continued to pay Wilkins at her usual wage rate, but with reduced work hours her average weekly wage was now $860.80 (40 x $21.52).

Because of her injury and her reduced income, Wilkins filed for workers' compensation benefits in the trial court. After finding that she sustained a compensable injury, the court awarded benefits based on a fifteen percent permanent partial disability to the whole body. This award is not on appeal. The trial court also awarded Wilkins $382 per week in temporary partial disability benefits for the forty-three days she worked after her injury. The court arrived at this award by determining Wilkins's average weekly wage before the accident ($1,433.82) and subtracting from that amount her weekly wage earned during the forty-three day period ($860.80), which yields a total of $573.02. The court then took 66 2/3% of $573.02 to arrive at $382. Finally, the court multiplied this number by 8.6 (forty-three days converted to weeks), which equals $3,258.20. The court awarded this amount in temporary partial disability benefits.

The trial court's calculation was based on its application of the "average weekly wage" measurement of benefits required in cases of "temporary total disability" and "permanent partial disability," and to a different degree, "permanent total disability." See Tenn. Code Ann. § 50-6-207(1), (3), and (4). Kellogg maintained that this calculation method does not apply in temporary partial disability cases and therefore appealed to the Special Workers' Compensation Appeals Panel. See Tenn. Code Ann. § 50-6-225(2)(e)(1), (e)(3). The case was transferred from the Panel to the full Supreme Court before a decision was entered by the Panel. See Tenn. Code Ann. § 50-6-225(e)(5)(A). We now reverse the trial court and hold that temporary partial disability benefits are

to be calculated according to the precise method specified in section 50-6-207(2). Under this method, Wilkins is not entitled to benefits for temporary partial disability.

## STANDARD OF REVIEW

The issue of statutory interpretation presented in this case is a question of law, which we review de novo, without a presumption of correctness of the trial court's judgment. See Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999); Owens v. Truckstops of America, 915 S.W.2d 420, 424 (Tenn. 1996).

## ANALYSIS

The Workers' Compensation Law classifies vocational disabilities into the following four distinct categories, each serving a specific compensation goal: (1) temporary total disability; (2) temporary partial disability; (3) permanent total disability; and (4) permanent partial disability. See Ivey v. Trans Global Gas & Oil, 3 S.W.3d 441, 446 (Tenn. 1999) (citing Tenn. Code Ann. § 50-6-207(1)-(4)); Redmond v. McMinn County, 209 Tenn. 463, 467, 354 S.W.2d 435, 437 (1962) ("Each of these four kinds of disability is separate and distinct and is separately compensated for by different methods provided by the several sub-sections of [the statute]; and each of such provisions is independent and unrelated."). We are only concerned in this case with the second category, temporary partial disability, which refers to the time during which the injured employee is able to resume work before reaching maximum medical improvement.

The statute provides that temporary partial disability benefits are to be awarded as follows: "In all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent (66 2/3%) of the difference between the wage of the worker at the time of the injury and the wage such worker is able to earn in such worker's partially disabled condition." Tenn. Code Ann. § 50-6-207(2). As described above, the trial court subtracted the wage Wilkins earned during the forty-three days in question ($860.80 per week) from the amount she had earned before her injury ($1433.82 per week), and awarded benefits based on this difference. The problem with this calculation, as Kellogg points out, is that both before and after her injury Wilkins made the same wage: $21.52 per hour (although, as noted, her overtime hours were paid out at a higher rate). To be sure, Wilkins took home less pay while on temporary partial disability status, but this is only because she worked 40 hours per week rather than her usual 60 hours per week – a limitation imposed on light duty workers by the governing union contract. Thus, according to the literal terms of the statute, "the difference between the wage of the worker at the time of the injury and the wage such worker is able to earn in such worker's partially disabled condition" is $0, which means that Wilkins is not entitled to any temporary partial disability benefits.

The trial court came to a different result by using a different definition of "wage" than hourly rate. The court calculated Wilkins's pre-injury wage based on her "average weekly wage." This term is defined in the statute as "the earnings of the injured employee in the employment in which the injured employee was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of the injury divided by fifty-two (52) . . . ." Tenn. Code Ann. § 50-6-102(2)(A). A court must use this definition as the measure of wages when determining a

temporary total or permanent partial disability award. See Tenn. Code Ann. § 50-6-207(1), (3). The definition is also a part of the permanent total disability award calculation, though in a different way. See Tenn. Code Ann. § 50-6-207(4)(A)(i) (explaining the method of calculating permanent total disability awards). But "average weekly wage" is nowhere listed in the temporary partial disability section of the statute, which only refers to the difference between the wage at the time of injury and the wage the employee is able to earn while on temporary partial disability status. This case, therefore, turns on the meaning of the word "wage" for the purpose of calculating Wilkins's benefits. It is clear that she may recover an award if the average weekly wage concept applies in the temporary partial disability context, and it is clear that she may not recover if wage refers to her hourly wage.

We must start from the premise that "[w]hile the Workers' Compensation Act is to be liberally construed for the employee's benefit, that policy does not authorize the amendment, alteration or extension of its provisions beyond its obvious meaning." Pollard v. Knox County, 886 S.W.2d 759, 760 (Tenn. 1994). This premise is simply a specific application of the most basic rule of statutory construction: courts must attempt to give effect to the legislative purpose and intent of a statute, as determined by the ordinary meaning of its text, rather than seek to alter or amend it. See, e.g., Mooney v. Sneed, 30 S.W.3d 304, 306-07 (Tenn. 2000) (citations omitted). In attempting to accomplish this goal, courts must keep in mind that the "legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose." Bryant v. Genco Stamping & Mfg. Co., 33 S.W.3d 761, 765 (Tenn. 2000). "Consequently, where the legislature includes particular language in one section of the statute but omits it in another section of the same act, it is presumed that the legislature acted purposefully in including or excluding that particular subject." Id.; see also Crowe v. Ferguson, 814 S.W.2d 721, 723 (Tenn. 1991) ("The Court should assume that the Legislature used each word in the statute purposely and that the use of these words conveyed some intent and had a meaning and purpose.").

With this premise in mind, and given the fact that each vocational disability category is distinct and serves a specific compensation goal, see Ivey, 3 S.W.3d at 446, Wilkins's argument that the trial court correctly calculated her benefits is not persuasive. The trial court based the award on Wilkins's pre-injury average weekly wage, but that concept is conspicuously absent from the temporary partial disability provision of the statute, which refers only to "wage." In a case very similar to the one before us, we have previously held that this conspicuous absence – the appearance of "average weekly wage" in one part of the statute but not another – was dispositive. In McCracken v. Rhyne, the employee sought benefits for a permanent partial disability at a time when such benefits were based on the "difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition . . . ." 196 Tenn. 72, 73, 264 S.W.2d 226, 227 (1953). The trial court found that the phrase "wage of the worker at the time of the injury" was synonymous with average weekly wage, and awarded benefits based on that rationale. We reversed, concluding that "the legislature intended to say exactly what it did say" and that a court does not have the authority "to substitute words of its own, and having a different meaning, in lieu of the words which it appears the legislature intended to use." Id. 196 Tenn. at 78-

79, 264 S.W.2d at 229. Although <u>McCracken</u> dealt with permanent partial disability, not temporary partial disability, it is difficult to see why the result in Wilkins's case should be any different.

Wilkins argues, based on an unreported decision of a Special Workers' Compensation Appeals Panel,[1] that a failure to incorporate the average weekly wage concept into the temporary partial disability calculation would undermine workers' compensation policy. She notes that the calculation of an employee's average weekly wage includes such compensation as overtime, bonuses, and commissions. <u>See</u> <u>P&L Const. Co. v. Lankford</u>, 559 S.W.2d 793, 795 (Tenn. 1978) (stating that the earnings of an employee under this definition "include anything received by him under the terms of his employment contract from which he realizes economic gain"). <u>But see</u> <u>Pollard</u>, 886 S.W.2d at 760 (holding that the scope of the "average weekly wage" definition is not unlimited and concluding that it excludes "fringe benefits"). The law includes this non-wage income in the benefits calculation in recognition of the way in which certain employees are actually compensated. Since the law recognizes the importance of non-wage income pursuant to the three other vocational disability categories, she argues, it should also recognize it pursuant to temporary partial disability; there is no reason to think that the Legislature would single out this latter category, to the detriment of employees who depend upon non-wage income in their weekly compensation.

If reading section 207(2) literally, thereby reversing the trial court, required us to accept Wilkins's argument in full, this case would indeed be difficult. Our decision would seem to call for a rethinking of this statutory provision, though such a rethinking would be the Legislature's duty, not this Court's. However, we do not find it necessary to interpret the statute as Wilkins suggests. Given the facts of this case, our holding simply does not implicate the policy concerns she raises. Wilkins's income, after all, was not based on bonuses or commissions. She only received an hourly wage from Kellogg, and this hourly wage remained the same before and after her injury. It is true that she typically worked twenty hours overtime per week and that after her injury she was unable to work these extra hours. Yet this decrease in hours was mandated by a union contract, which placed limits on work hours for light duty employees. Despite her inability to work overtime, she still worked a full forty-hour week and was compensated based on a full forty-hour week. Thus, we do not agree that the policy underlying the Workers' Compensation Law is thwarted by reading section 207(2) as if it does not include the average weekly wage concept – and, according to the statute's text, it does not. As we have stated previously, the purpose of workers' compensation is to "provide injured workers with periodic payments as a substitute for lost wages in a manner consistent with the worker's regular wage." <u>Mackie v. Young Sales Corp.</u>, ___ S.W.3d ___, ___ (Tenn. 2001); <u>see also</u> <u>Perdue v. Green Branch Mining Co.</u>, 837 S.W.2d 56, 59 (Tenn. 1992); <u>Van Hooser v. Mueller Co.</u>, 741 S.W.2d 329, 330 (Tenn. 1987). Wilkins did not need a "substitute for lost wages in a manner consistent with [her] regular wage" because she was in fact paid her regular wage for the forty-three days she was on temporary partial disability status.

---

[1] <u>King v. Goodyear Tire & Rubber Co.</u>, No. 02S01-9611-CH-00100, 1997 WL 468958 (Tenn. Aug. 18, 1997).

Kellogg responds to Wilkins by arguing that far from thwarting workers' compensation policy goals, its light duty program benefits workers who are temporarily and partially disabled but still willing and able to work, and in doing so the program promotes the policy of helping workers become fully rehabilitated so they can resume their former jobs. If Wilkins's argument is accepted, Kellogg maintains, and the company must pay the difference in compensation based on the average weekly wage definition (in this case an additional $382 per week) "it would be a tremendous disincentive to Kellogg to offer employees light duty status during periods of temporary partial disability because it would be forced to pay employees for services not rendered." This disincentive, Kellogg argues, is detrimental to workers' compensation policy; indeed in certain cases, as here, the abolition of a light duty program would leave an employee worse off financially. Kellogg notes that the trial court found that Wilkins's maximum weekly benefit was $454.13, the amount of benefits she would have received had she remained at home, that is, had Kellogg not given her the opportunity to work on light duty status. Wilkins does not dispute this figure. Since she earned $860.80 per week while on light duty status, she has received more in wages than she would have received in benefits. Under the circumstances, Kellogg argues, she should not be entitled to a $382 per week "windfall."

We cannot say with certainty that Kellogg's policy arguments represent the true legislative purpose in omitting reference to average weekly wages in section 207(2), for the text of the statute does not clearly reveal the legislative purpose. We find Kellogg's arguments significant, however, because they demonstrate a reasonable, fair interpretation of the policy goals underlying workers' compensation. To the extent Wilkins must show that giving effect to the ordinary language in the statute would actually contravene legislative intent, we do not think she has made this showing. Therefore, we cannot avoid the conclusion that the trial court erred in calculating Wilkins's wages based on a particular method that is conspicuously absent from the applicable statutory provision.

Justice Birch argues in dissent that this result is contrary to legislative intent, creates the potential for abuse, and muddles the benefit calculation. His first argument is based on an understanding of legislative intent that does not sufficiently account for the actual words of the statute. Indeed, he would hold that the legislature intended to use the words "average weekly wage" to govern the interpretation of the one part of the statute – among the four categories of disability – where those words are conspicuously absent. Perhaps the "average weekly wage" concept should govern all benefit calculations. The problem is that, according to the statute's express terms, it does not.

Justice Birch's second argument is, in our view, more substantial. For the reasons he carefully articulates, if "wage" *always* means "hourly rate of pay," no matter the factual circumstances of the case, employers might seek to reduce employees' work hours to unacceptably low levels. The mere possibility of such abuse is arguably sufficient cause for the legislature to amend the statute, though, of course, that is not up to this Court. To his arguments, however, we respond, first, that Kellogg's employment policy with respect to Wilkins – which is the only case before us – is anything but abusive. As we have explained, Kellogg has paid Wilkins ($860.80 per week) far more than she would have received in benefits ($454.13 per week). This amount might

well have been even greater, were it not for the limitations imposed by Wilkins's union contract. Simply stated, Wilkins does not need to be reimbursed for the financial consequences of her workplace injury, as Justice Birch suggests, because Kellogg has already "reimbursed" her well beyond the maximum benefit provided in the temporary partial disability provision of the statute. See Tenn. Code Ann. § 50-6-207(2) (incorporating the maximum weekly benefit provision in section 207(1), which governs temporary total disability awards). Wilkins, therefore, clearly does not suffer from the Court's holding. To the contrary, our holding provides an incentive for employers to provide their employees with beneficial light duty programs. Were the Court to adopt Justice Birch's approach, however, we might create the opposite incentive, thereby forcing employers to provide far less generous programs, or even no programs at all. In the latter situation, as we have explained, employees in Wilkins's shoes would receive far less compensation for their injuries.

Our second response to Justice Birch's "potential for abuse" argument, is that nothing in our holding prevents the Court from addressing such abuses should they arise in future cases. Section 207(2) includes a maximum benefit provision, mentioned above, as well as a minimum weekly benefit provision, which reads: "In no event shall the compensation be less than the minimum weekly benefit." Were an employer to offer its employee compensation below that which she could receive in weekly benefits, the case would be different. This Court has never allowed employers to rework their compensation plans for temporarily injured workers so as to avoid paying benefits. Once again, we are today presented with a case where the employer's plan substantially exceeds the level of benefits.

As to Justice Birch's third argument, that our holding muddles the benefit calculation, we can only respond that a holding that will require further clarification when applied to new circumstances – where we are confronted with employers and employees who are not situated similarly to Kellogg and Wilkins – is not "muddled." We can answer the questions that "remain unanswered" when they are properly before us.


For these reasons, we hold that the method of calculating temporary partial disability benefits, according to the terms of section 207(2), does not include the average weekly wage definition. Under the correct method, the "difference between the wage of [Wilkins] at the time of the injury and the wage [she was] able to earn in [her] partially disabled condition" is $0. The trial court's award of temporary partial benefits is therefore reversed.

Finally, we emphasize that it is unnecessary to consider the issue Wilkins has raised: whether the term "wage" in section 207(2) takes into account an employee's non-wage income if that employee is regularly compensated by non-wage income. That is a different case, whose resolution is not necessarily foreordained by our holding that section 207(2) does not incorporate the term "average weekly wage."

## CONCLUSION

For the reasons explained above, we reverse the trial court and hold that temporary partial disability benefits are calculated in the precise manner specified in Tennessee Code Annotated section 50-6-207(2), which does not take into consideration the "average weekly wages" definition found in section 102(2)(A). Under the correct calculation, we hold that Wilkins is not entitled to any temporary partial disability benefits.

 

FRANK F. DROWOTA, III, JUSTICE