IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 5, 2002 Session

## ROBERT L. POWELL, JR.  v.  BLALOCK PLUMBING ELECTRIC & HVAC, INC., ET AL.

**Appeal from the Chancery Court for Franklin County**
**No. 16,186     Hon. Jeffrey F. Stewart, Chancellor**

<hr>

**No. M2001-00204-WC-WCM-CV - Filed July 12, 2002**

<hr>

WILLIAM M. BARKER, dissenting.

In this permanent partial disability case, the essential issue is whether the employee is limited to an award of two and one-half times his medical impairment rating under Tennessee Code Annotated section 50-6-241(a)(1), or whether the trial court was correct to award the employee four times his impairment rating under section 50-6-241(b).  Both the majority and concurring opinions in this case ultimately find that the employee is entitled to receive the benefit of the greater multiplier, though each employs different reasoning.  I respectfully disagree with both positions, and for the reasons given below, I would hold that the employee here is properly limited to an award of two and one-half times his medical impairment rating under section 50-6-241(a).

As prior case law interpreting section 50-6-241(a) holds, an employee who suffers from a permanent partial disability is limited to an award of two and one-half times his medical impairment rating when the employee (1) returns to work at "a wage equal to or greater than the wage the employee was receiving at the time of injury," and (2) otherwise experiences a "meaningful return to work."  See Advo, Inc. v. Phillips, 989 S.W.2d 693, 696 (Tenn. Workers' Comp. Panel 1998) (holding that section 50-6-241(a) applies when the employee "has made a meaningful return to work and is earning a wage equal to or greater than that earned before the injury"); Newton v. Scott Health Care Ctr., 914 S.W.2d 884, 886 (Tenn. Workers' Comp. Panel 1995).  If either one of these factors is not established, then the trial court may award the employee up to six times the impairment rating under section 50-6-241(b).  See Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 630 (Tenn. 1999).

With respect to the first factor examining the employee's "wage," the majority and the concurring opinion disagree as to the proper definition of that term as it is used in section 50-6-241(a).  The concurring opinion opines that an employee's "wage" under this statute "should be calculated on a weekly scale," whereas the majority, citing Wilkins v. The Kellogg Co., 48 S.W.3d 148 (Tenn. 2001), holds that the term means "the employee's hourly rate of pay."  The Wilkins

decision was not a unanimous opinion of this Court, and I joined Justice Birch in dissenting in that case. I did so because I believed then, as I do now, that when the term "wage" is applied to classifications of partial disability, it must mean something more than one's hourly rate of pay. As Justice Birch related in his dissent in Wilkins, and again in this case, the majority's interpretation of this term plainly fails to account for the employee's actual economic loss suffered by the compensable injury. Because the legislature intended the workers' compensation statutes to help "reimburse employees for the financial consequences of workplace injuries," Wilkins, 48 S.W.3d at 156 (Birch, J., dissenting), I would conclude that the General Assembly did not intend that "wage" be defined here as merely the employee's "hourly rate of pay."

However, though my view of what the law *should be* is contrary to the majority' formulation today, I cannot ignore what the law *is* on this appeal. I continue to believe that Wilkins was wrongly decided, but I also recognize that a majority of this Court remains presently content to retain that holding. To be clear, I welcome the opportunity to reexamine Wilkins either when we are asked by the parties specifically to do so or when we bear witness to expressions of legislative disapproval with that decision.[1] Nevertheless, because neither of these circumstances is present here, I reluctantly agree with the majority—with regard to this case alone—that the employee returned to work "at a wage equal to or greater than the wage the employee was receiving at the time of injury." Tenn. Code Ann. § 50-6-241(a).

I cannot agree, however, with the majority's conclusion as to the second factor of the test under section 50-6-241, *i.e.*, that the employee has failed to make a "meaningful return to work." This phrase does not appear in the language of the statute, and this Court has been unable to define its core concepts, other than to declare the phrase denotes what is reasonable under the circumstances. See, e.g., Nelson, 8 S.W.3d at 630. To this end, we are supposed to make an assessment of two factors: (1) the reasonableness of the *employer's* actions in attempting to return the employee to work; and (2) the reasonableness of the *employee's* actions in not returning to work. See Newton, 914 S.W.2d at 886. Under my examination of these factors, I conclude that the employee in this case made a meaningful return to work.

The majority does not dispute that the employer exercised reasonable efforts in attempting to return the employee to work. In fact, I believe that its efforts could even be characterized as laudable. The record shows that the employer offered to retain Mr. Powell in the same position with the same duties; permitted him to work at his own pace and subject to his medical restrictions; paid him the same hourly wage of $14.00/hour; provided him with the same level and types of benefits; and allowed him to work a reduced work schedule. Although the employee testified that he could perform only some of his regular job functions without difficulty, the record does not show that these facts were regarded by the employer as especially important or that they otherwise diminished Mr. Powell's value as an employee. Indeed, given that the employer was continuing to employ him with the same benefits and hourly wages as before his injury, just the opposite conclusion may be inferred.

---

[1] In this case, the parties do not cite to Wilkins in their briefs, and they largely focus on the issue of whether the employee experienced a meaningful return to work.

The majority goes on to conclude, however, that section 50-6-241(b) applies here because the employee acted reasonably in not returning to full-time employment. As support for this conclusion, the majority relies principally upon the employee's testimony that he was unable to work full time due to the pain from his compensable injury. Despite the fact that the employee was able to work four full days a week prior to the trial, the majority accepts as reasonable that the employee was simply unable to work that extra fifth day for his employer. I respectfully disagree.

Any employee who returns to work at essentially the same position, at the same wage, and at eighty percent of his or her pre-injury hours has, in my opinion, made a meaningful return to work as a matter of law. The majority's conclusion that the employee must return to work for *the same number of hours* before he or she makes a meaningful return to work is not supported by any language in section section 50-6-241(a). Indeed, such a rule is overly burdensome in that it subjects an employer to paying greater benefits simply because, all other things being equal, the employee refuses to work 100% of his or her pre-injury hours.

Although the number of hours worked is relevant to any analysis of whether an employee's refusal to work is reasonable, an employee working thirty-two of forty hours a week is more than capable of having a meaningful return to work depending upon the other circumstances of the case. In this case, the employee was paid the same wage and was employed in essentially the same position. I find no other circumstances in this case which suggest that the employee here "reasonably" refused to work an additional eight hours a week for the defendant.

To the contrary, the preponderance of the evidence shows that the employee did not scale back his employment due to any pain from his work-related injury. Instead, it appears that he has cut back on his hours with the defendant to accommodate his own housing construction business. Both the employee and his wife testified at trial that after he finishes working for the defendant during the day, he goes directly to work with his own construction business, performing many of the same light-duty functions that he does with the defendant.[2] Indeed, though contradicted by the employee, his wife, who is a partner in this construction business, testified specifically that her husband works *four* additional hours every evening with his business and that he spends additional time on the weekends doing the same work.

The majority relies heavily on the fact that the employee stated that he did not work much in the evenings with his own construction firm. Even if the actual number of hours were relevant to the analysis, this "fact" is seemingly contradicted by the employee himself, who testified that he normally worked, depending on the day, as much as two hours or as little as thirty minutes. Indeed, he even testified that in the weeks preceding the trial, he worked "a couple more *hours* than normal." (emphasis added).

---

[2] Mr. Powell testified that we works for the defendant from 7:00 a.m. to 3:30 p.m. Although he disputed the testimony of his wife on how much he actually works at his other job, he testified that when he goes, he usually arrives at 4:00 p.m.

However, the actual number of hours that Mr. Powell worked on his own job site is not relevant to the analysis. What *is* relevant is that Mr. Powell is *able to work* on his own job site after a full eight hours with the defendant, thereby providing powerful, if not conclusive, evidence that he *could* work more hours with the defendant if he chose to do so. After all, an additional two hours here or two hours there brings this employee ever closer to the full-time talisman of forty hours that the majority now seems to require before finding a meaningful return to work.

Plainly stated, this is not a case in which the employee, so overcome with pain and exhaustion from a work-related injury, struggles home each night to heal from a hard day's labor. Nor is this a case in which the employee needs a little additional time away from work to quietly convalesce in the comfort of familiar surroundings. Rather, this appears to be a case in which the employee has sought to use the occurrence of a past work-related injury to subsidize his own business endeavors. By finding that this employee "cannot" work a full forty hours in a week, we have given him our blessing to spend this additional time with his own construction firm, to be paid, in part, by his employer bearing the additional burden of a four-times multiplier under section 50-6-241(b). I cannot agree that this result reached by the majority today is appropriate under the statutes.

Given the additional time to which this employee dutifully devotes his own construction business, he is clearly able, without limitation from pain, to work an additional eight hours a week for the defendant. Unlike the majority today, I would not conclude that an employee "reasonably" fails to work when he or she has a demonstrated ability to work, but simply chooses not to do so. In my view, therefore, the weight of the evidence clearly supports a finding that the employee's failure to work an additional eight hours a week with the defendant was due to factors other than pain from a compensable injury. Accordingly, I would find that the employee has made a meaningful return to work at the same "wage," thereby invoking the two and one-half times multiplier in Tennessee Code Annotated section 50-6-241(a).

For these reasons, I respectfully dissent.

_____
WILLIAM M. BARKER, JUSTICE