FILED

March 9, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:57 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

Tara Marshall,
      Employee,

v.

Mueller Company,
      Employer,

And

Ace American Insurance Company,
      Carrier.

Docket No.: 2015-01-0147

State File No.: 63950 2014

Judge Audrey A. Headrick

## COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on February 16, 2016, for a Compensation Hearing, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The sole legal issue is whether Ms. Marshall is entitled to increased permanent partial disability benefits beyond her original award.[1] For the reasons set forth below, this Court finds Ms. Marshall did not establish by a preponderance of the evidence that she is entitled to increased permanent partial disability benefits.

### History of Claim

Ms. Marshall is a fifty-three-year-old resident of Hamilton County, Tennessee. (T.R. 1.) Mueller Company employed Ms. Marshall in the Cluster Department. *Id*. Ms. Marshall sustained a work-related left-leg fracture on August 14, 2014. (Ex. 4.) Mueller did not contest compensability, and the parties settled Ms. Marshall's claim on July 31, 2015, prior to the expiration of the initial compensation period. (Ex. 1.) After the initial compensation period expired on October 13, 2015, Ms. Marshall filed a Petition for Benefit Determination seeking increased permanent partial disability benefits. *Id*.

On August 14, 2014, when Ms. Marshall sustained a work-related left-leg fracture, her hourly wage was $19.56 plus overtime. (Ex. 4.) This hourly rate included Ms. Marshall's

---

[1] A complete listing of the technical record, stipulations, and exhibits admitted at the Compensation Hearing is attached to this Order as an appendix.

1

base pay of $17.86, an extra $1.50 for Mueller's summer hours' bonus, and a $0.20 shift differential increase. *Id.* The summer hours' bonus refers to a program memorialized in a collective bargaining agreement, titled "Memorandum of Agreement," entered into on May 7, 2013. (Ex. 3.) The agreement states, in pertinent part, the following:

> The Company and the Union (USW) have mutually agreed that the current business environment is in a recession and for the Company to take full advantage of the lowest energy rates offered by [TVA] we are adopting, on a non-precedent setting basis, irregular shift hours. Beginning on Sunday June 2d, 2013 at 8:00 PM and ending October 4, 2013 for the Iron Melt, Foam Molding, Cleaning Room, General Foundry Labor and No-Bake Iron Departments.
>
> . . .
>
> Employees working in the effected [sic] departments will receive a $1.00 per hour shift premium on top of their contractual shift premium during the irregular shift schedule.

*Id.*

The parties stipulated the Memorandum of Agreement is still in effect. The parties also stipulated the Memorandum of Agreement affected all employees working in the Melt Department, including Ms. Marshall.[2] Several departments at Mueller fall within the Melt Department; however, Mueller cannot state the terms of the Memorandum of Agreement affect at least fifty percent of all hourly employees at Mueller.[3] The Wage Statement prepared by Mueller included the summer hours' bonus wages made by Ms. Marshall in the fifty-two weeks preceding her injury on August 14, 2014. (Ex. 4.) Ms. Marshall's average weekly wage is $1,122.50, which equates to a weekly compensation rate of $748.33. *Id.*

After her injury and subsequent surgery, Ms. Marshall returned to work at Mueller on February 3, 2015. *Id.* At the end of the initial compensation period on October 13, 2015, Ms. Marshall's hourly rate was $18.16. *Id.* The 2015 summer bonus hours' program ended on September 30, 2015, and "all employees in the Melt department returned to their normal base rate of pay." *Id.*

---

[2] The "Cluster Department" identified by Ms. Mueller in her PBD is not included in the list of departments referenced in the Memorandum Agreement. However, it was undisputed that Ms. Marshall's department falls within the terms of the Memorandum Agreement.

[3] Pursuant to Tennessee Code Annotated section 50-6-207(3)(D)(iii) (2015), an employee is not entitled to increased benefits when: "The employee remains employed but received a reduction in salary, wages or reduction in hours that affected at least fifty percent (50%) of all hourly employees operating at or out of the same location."

Ms. Marshall filed a Petition for Benefit Determination on November 10, 2015, seeking increased permanent disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on December 14, 2015. This Court conducted the Compensation Hearing on February 16, 2016.

At the Compensation Hearing, Ms. Marshall argued Tennessee Code Annotated section 50-6-207(3)(B) (2015) controls the outcome in her case and provides certainty that she is entitled to increased benefits. She pointed out the following pertinent language in Tennessee Code Annotated section 50-6-207(3)(B) (2015):

> If at the time the period of compensation provided by subdivision (3)(A) ends, the employee has not returned to work with any employer or has returned to work and is receiving wages or a salary that is less than one hundred (100%) of the wages or salary the employee received from his pre-injury employer on the date of injury, the injured employee may file a claim for increased benefits. If appropriate, the injured employee's award as determined under subdivision (3)(A) shall be increased[.]

Ms. Marshall argued the legislature changed the pre-Reform law regarding permanent partial disability benefits and included specified multipliers to provide certainty in the outcome. She contends the plain meaning of Tennessee Code Annotated section 50-6-207(3)(B) (2015) entitles her to increased benefits.

Mueller countered the legislature did not intend for the facts of Ms. Marshall's case to trigger increased benefits, but it intended for the Court to look at all of the circumstances involved when making rulings under Tennessee Code Annotated section 50-6-207(3)(B) (2015). Mueller pointed out that Ms. Marshall remains in her same job, makes her regular pay, and will return to summer hours' bonus pay this June. Further, it contends Tennessee Code Annotated section 50-6-207(3)(D)(iii) (2015) does not automatically entitle an employee to increased benefits if less than fifty percent of all employees are affected by reductions in salary, wages or hours.[4]

In the event the Court awards increased benefits, the parties stipulated that Ms. Marshall's calculation of increased benefits in the amount of $14,634.28 is correct, with Mueller receiving a credit in the amount of $23,572.40 for the original award. (Ex. 4.)

---

[4] Tennessee Code Annotated section 50-6-207(3)(D)(iii) (2015) prohibits an employee from recovering increased benefits when fifty percent or more of all employees operating at or out of the same location are affected by reductions in salary, wages or hours. However, that provision appears to apply only to situations where the decrease in salary, wages or hours occurs *after* an employee's work-related injury: "The employee *remains employed but received* a reduction in salary, wages, or hours[.]" Tenn. Code Ann. § 50-6-204(3)(D)(iii) (2015) (emphasis added).

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015). *See also* Tenn. Code Ann. § 50-6-239(c)(6) (2015) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

As previously stated, the sole legal issue is whether Ms. Marshall is entitled to increased permanent partial disability benefits beyond her original award pursuant to Tennessee Code Annotated section 50-6-207(3)(B) (2015). In *Hadzic v. Averitt Express*, No. 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *8-9 (Tenn. Workers' Comp. App. Bd. May 18, 2015), the Workers' Compensation Appeals Board addressed the principles of statutory construction:

> Courts must avoid a construction that unduly restricts or expands the meaning of the language used, as every word is presumed to have meaning and purpose. *Id.* As stated by one court, when the words used "clearly mean one thing, the courts cannot give them another meaning under the guise of construing them." *Pfizer, Inc. v. Johnson*, No. M2004-00041-COA-R3-CV, 2006 Tenn. App. LEXIS 44, at *7 (Tenn. Ct. App. Jan. 23, 2006).

Additionally, [t]he court must examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning. *Id.* If the language of the statute is ambiguous, the court must examine the entire statutory scheme and the legislative history to ascertain and give effect to the legislative intent." *Galloway v. Liberty Mut. Ins. Co.*, 137 S.W.3d 568, 570 (Tenn. 2004)

The first sentence of Tennessee Code Annotated section 50-6-207(3)(B) (2015) states:

> If at the time the period of compensation provided by subdivision (3)(A) ends, the employee has not returned to work with any employer or has returned to work and is receiving *wages* or a salary *that is less than one hundred (100%) of the wages* or salary *the employee received from his pre-injury employer on*

4

*the date of injury*, the injured employee may file a claim for increased benefits.

(Emphasis added.)

Since "every word is presumed to have meaning and purpose," the Court must analyze the legislature's use of the word "wages." *Hadzic, supra.* "Wages" is not a defined term in the Workers' Compensation Law. In pre-Reform cases, the Tennessee Supreme Court defined "wage" in relation to its interpretation of the temporary partial disability statute and the right of reconsideration statute.[5] In *Wilkins v. Kellogg Co.*, 48 S.W. 3d 148, 153-154 (Tenn. 2001), the full Supreme Court concluded "wage" means an employee's hourly pay as opposed to an employee's "average weekly wage" when calculating temporary partial disability benefits pursuant to Tennessee Code Annotated section 50-6-207(2).[6] The Court noted it had previously reached the same conclusion regarding the former use of the word "wage" in the statute for permanent partial disability benefits. *Id.* at 152. Likewise, in *Powell v. Blalock Plumbing & Elec. & HVAC*, 78 S.W.3d 893, 897 (Tenn. 2002), a right of reconsideration case, the Supreme Court reiterated that, "the wage of an employee who is compensated on an hourly basis is the employee's hourly rate of pay."

In *Wilkins*, the employee was seeking temporary partial disability benefits because of reduced overtime hours after she returned to work on light duty restrictions. *Wilkins*, 48 S.W.3d at 150. The Court noted the employee's hourly pay was $21.52 per hour, and she received an increased hourly rate for her overtime hours. *Id.* A union contract was in place that prohibited employees from working overtime while on restricted duty. *Id.* The Court acknowledged the employee "took home less pay while on temporary partial disability status, but this is only because she worked 40 hours per week rather than her usual 60 hours per week—a limitation imposed on light duty workers by the governing union contract." *Id.* Under those facts, the Court analyzed the employee's "wage" as follows:

> [Ms. Wilkins] only received an hourly wage from Kellogg, and this hourly wage remained the same before and after her injury. It is true that she typically worked twenty hours overtime per week and that after her injury she was unable to work these extra hours. Yet this decrease in hours was mandated by a union contract, which placed limits on work hours for light duty employees.

---

[5] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

[6] The Court's holding in *Wilkins* regarding the computation for temporary partial disability benefits was overruled on July 1, 2004, when the temporary partial disability statute was amended to include the phrase "average weekly wage." *Williams v. Saturn*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *8 (Tenn. Workers' Comp. Panel Nov. 15, 2015).

Despite her inability to work overtime, she still worked a full forty-hour week and was compensated based on a full forty-hour week. . . . As we have stated previously, the purpose of workers' compensation is to "provide injured workers with periodic payments as a substitute for lost wages in a manner consistent with the worker's regular wage." Wilkins did not need a "substitute for lost wages in a manner consistent with [her] regular wage" because she was in fact paid her regular wage for the forty-three days she was on temporary partial disability status.

*Id.* at 153.

There are also many pre-Reform cases involving collective bargaining agreements wherein the employees received a lower hourly rate of pay during plant shutdowns. *See Young v. Bridgestone Ams. Tire Operations, LLC,* No. M2011-02551-WC-R3-WC, 2013 Tenn. LEXIS 10, at *10-*12 (Tenn. Workers' Comp. Panel Jan. 10, 2013) (holding the lower cap applied because the employee had a meaningful return to work because the collective bargaining agreement reduced his hourly wage by $2.72 per hour due to economic conditions); *Robinson v. Bridgestone Ams. Tire Operations, LLC*, No. M2011-02238-WC-R3-WC, 2012 Tenn. LEXIS 840, at *2-*12 (Tenn. Workers' Comp. Panel Nov. 21, 2012) (holding the employee was not entitled to reconsideration benefits when a collective bargaining agreement entered into after the employee's case settled resulted in an hourly wage reduction to all union members due to economic reasons); *Edwards v. Saturn Corp.*, No. M2007-01955-WC-R3-WC, 2008 Tenn. LEXIS 617, at *7, *10-*30 (Tenn. Workers' Comp. Panel Sept. 25, 2008) (holding the lower cap applied because the collective bargaining agreement required a five percent pay reduction during a layoff period due to a lengthy plant shutdown to retool its assembly lines for production of a new product).

Although the pre-Reform cases do not control the outcome of the present case, the logic and reasoning behind the Tennessee Supreme Court's holdings are helpful in defining "wages" as used in Tennessee Code Annotated section 50-6-207(3)(B) (2015). The pre-Reform cases are also instructive regarding the effect of a collective bargaining agreement in relation to an employee's request for increased benefits.

In Ms. Marshall's case, the parties stipulated the hourly pay of all employees within the affected departments changed due to the summer hours' bonus program. The summer hours' bonus program was, and continues to be, governed by a collective bargaining agreement that was in effect prior to Ms. Marshall's injury on August 14, 2014. The terms of the Memorandum Agreement plainly state the union accepted the summer bonus hours' program because the "business environment is in a recession." The parties stipulated the terms of the Memorandum Agreement entered into on May 7, 2013, are still ongoing, and Ms. Marshall's summer hours' bonus pay will resume in June 2016.

As with the employee in *Wilkins, supra*, a collective bargaining agreement governs Ms. Marshall's change in hourly rate. Despite the liberal construction in favor of employees for pre-Reform cases, the Tennessee Supreme Court held that Ms. Wilkins was not entitled to temporary partial disability benefits even though her pre-injury hourly wage was higher for twenty hours of overtime that she worked each week. In its analysis, the Court focused on Ms. Wilkins' "regular wage" and determined it remained the same before and after her injury. *Id.* at 153. It also focused on the fact that Ms. Wilkins' took home less pay after her injury because the loss of her twenty hours of overtime wages "was mandated by a union contract." *Id.* The collective bargaining agreement in *Wilkins* controlled the prohibition against an employee working overtime while on light duty, which was clearly a determinative factor in the Court's analysis. *Id.* Likewise, Ms. Marshall's "normal base rate of pay" is what she was making when the initial compensation period expired on October 13, 2015. Specifically, Ms. Marshall was making her "normal base rate of pay" on October 13, 2015, because the collective bargaining agreement in effect prior to her injury on August 14, 2014, required it.

Ms. Marshall's case is also analogous to an employee who works a swing shift and makes a shift differential increase depending on the particular shift worked. In Ms. Marshall's case, her injury occurred on August 14, 2014, during Mueller's summer hours' bonus program, which runs from approximately June 2 through October 4 each year. Therefore, her hourly pay at the time of her injury was $19.56 plus overtime. Once the initial compensation period expired on October 13, 2015, her hourly pay had returned to her normal base rate of pay of $17.86. If Ms. Marshall's injury had occurred in any month of the year besides June through October, her hourly pay at the end of the initial compensation period would either be the same or higher resulting in no entitlement to increased benefits.

The second sentence of Tennessee Code Annotated section 50-6-207(3)(B) (2015) specifically states, "*[i]f appropriate*, the injured employee's award as determined under subdivision (3)(A) shall be increased by multiplying the award by a factor of one and thirty-five one hundredths (1.35)." (Emphasis added.) The word "appropriate" means "right or suited for some purpose or situation."[7] The phrase "[i]f appropriate" indicates an employee is only entitled to increased benefits if the Court finds that the statute's preceding sentence is satisfied.

In Ms. Marshall's case, ordering increased benefits would result in an illogical outcome dependent upon which months of the year Ms. Marshall happened to be injured and returned to work. The Court finds that the collective bargaining agreement required that Ms. Marshall return to her "normal base rate of pay" on October 13, 2015. Accordingly, under the facts of this case, this Court finds increased benefits are not appropriate, and respectfully declines to award increased permanent partial disability benefits.

---

[7] www.merriam-webster.com (last visited March 9, 2016).

IT IS, THEREFORE, ORDERED that the claim of Ms. Marshall against Mueller or its workers' compensation carrier for the requested increased permanent partial disability benefits is denied.

**ENTERED this the 9th day of March, 2016.**

_Audrey Headrick_
**Audrey A. Headrick**
**Workers' Compensation Judge**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing

8

for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

## APPENDIX

Technical record:

1. Petition for Benefit Determination, filed November 10, 2015;
2. Dispute Certification Notice, filed December 14, 2015;
3. Request for Initial Hearing, filed December 15, 2015;
4. Transfer Order, entered December 21, 2015;
5. Initial Hearing Order, entered January 19, 2016;
6. Mueller Company's Pre-Hearing Statement, filed February 4, 2016;
7. Tara Marshall's Pre-Hearing Statement, filed February 2, 2016;
8. Mueller Company's Exhibit List, filed February 5, 2016; and,
9. Mueller Company's Witness List, filed February 5, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:

1. Workers' Compensation Settlement Agreement dated July 31, 2015;
2. Medical report and impairment rating from Dr. Ben Miller, dated March 3, 2015, and March 5, 2015;
3. Collective bargaining agreement entitled "Memorandum Agreement," dated May 7, 2013; and,
4. Joint Stipulation of the Parties, filed February 2, 2016.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 9th day of March, 2016

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Jeffrey W. Rufolo | | | | | X | jrufolo@summersfirm.com |
| Joseph R. White | | | | | X | jrw@smrw.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

11