IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 9, 2001 Session

# DENNIS PLEMONS, ET AL. v. LARRY MOSES, ET AL.

**Appeal from the Circuit Court for Monroe County**
**No. V00224H     John B. Hagler, Judge**

**FILED JULY 24, 2001**

**No. E2000-02781-COA-R3-CV**

Dennis Plemons ("Plaintiff") leased the Crossroads Market to Larry Moses ("Defendant") pursuant to a five-year lease. Prior to the expiration of the lease, Plaintiff found new tenants willing to pay significantly more to lease the property. Plaintiff informed Defendant about the new potential tenants and gave Defendant the opportunity to continue leasing the property if he would pay this higher rent. Defendant declined to lease the property for this increased amount. Plaintiff allowed Defendant to continue leasing the property until the new tenants were ready to assume possession of the property. When the new tenants were ready to assume possession, Defendant refused to vacate the premises claiming that he was a holdover tenant and entitled to possession of the property under a year-to-year tenancy after the expiration of the lease. The Circuit Court held that a new month-to- month tenancy had been created and, therefore, Plaintiff was entitled to possession. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Larry D. Cantrell, Athens, Tennessee, for the Appellants Larry Moses and Carol Moses.

Clifford E. Wilson, Madisonville, Tennessee, for the Appellees Dennis Plemons and Alice Plemons.

## OPINION

## Background

On December 27, 1994, Plaintiff entered into a lease agreement with the Defendant which covered property known as the Crossroads Market in Monroe County.[1] Plaintiff leased the property to Defendant for two five-year periods, with the second period beginning January 1, 1995, and ending January 1, 2000. The rent for the second period was $1,300.00 per month. This litigation centers around what happened shortly before and after the expiration of the lease, and whether a new year-to-year lease was created by the actions of the parties.

Plaintiff testified that prior to the expiration of the lease and sometime in December of 1999, he told Defendant that the property value had increased significantly because a shopping center was being built across the street. He believed the property was worth about $3,000.00 per month. Plaintiff claims he told Defendant later that same month he had located potential tenants willing to pay $2,500.00 per month and if he (i.e., Defendant) wanted to continue leasing the Crossroads Market, "he was welcome to do that, but it would be at $2,500 a month." Plaintiff then testified as follows:

Q      And what did he tell you?

A.      He said he didn't think it was worth that. And I said, "Well, these guys are not in any hurry to take over." I said, "They probably don't want to take over till July or maybe August." I said, "Take your time and, you know, study about it and make sure that's what you want to do."

Q      And when did that conversation take place?

A      That was in December.

Q      When was the next time you talked to him about the lease?

A      He took January and February, which I wasn't in any hurry. He took January and February to make up his mind. And at the last of February I told him – I said, "These guys are needing to know something." I said, "We need to know which direction to go in. Have you made up your mind?"

---

[1] Plaintiff and his wife entered into the lease with Defendant and his wife, all of whom are parties to this action. Neither Plaintiff's wife nor Defendant's wife testified at trial, so we will refer to the parties in the singular.

And he said, "I can't pay $2,500. That's too much. $1,600 a month is all it's worth."

Q    What else did you say, if anything, at that time?

A    Well, I said, "If you want to stay here for $1,600 a month, you can until July the 1st or August the 1st or whenever these guys want to take over."

Q    And what did he say?

A    He said it would be okay. He kind of grunted and said all right or something. . . .

On cross-examination, Plaintiff testified that when Defendant refused to pay $2,500.00, he told Defendant: "Until these guys get ready to take over, we would go $1,600 on a month-to-month deal. They'll take over either July or August." Defendant then began paying $1,600.00 per month for rent beginning in March, but never offered to pay $2,500.00. In June, the new tenant wanted to meet with Defendant to discuss buying the stock and equipment. Although they met, it was not a successful meeting. Plaintiff sensed trouble at this meeting and met with his attorney. On June 21, 2000, Plaintiff's attorney sent a letter to Defendant as notice that "your month to month lease of Cross Roads Market will be terminated as of August 1, 2000, as new tenants are scheduled to take over on that date. As you know, you did not elect to accept the offer to continue your business at this location at the prevailing rental rates.…" Thereafter, on August 1st, Defendant attempted to hand deliver rent for the month of August. Plaintiff refused to accept the rent, and this detainer action followed.

Not surprisingly, Defendant's testimony was somewhat different. Defendant testified that he spoke with Plaintiff on December 24, 1999, about whether a new lease had been prepared so that he could continue leasing the subject property. Plaintiff told him that a new lease had not been prepared and that the property was worth a lot more than $1,3000.00 per month and he was going to "get out and see what the place is worth." Defendant stated that he continued to pay $1,300.00 in rent for January and February 2000. Then, sometime in February, Defendant received a telephone call from Plaintiff who suggested that the rent be increased to $1,600.00 per month until Defendant could find out what the "place was worth." According to Defendant: "He was going to give me – he was going to see what it was worth, and then I didn't know what was going to happen after that. I can't read minds." During this February conversation, Defendant agreed to pay the $1,600.00 per month in rent.

According to Defendant, by June 16th, Plaintiff apparently had located new potential tenants who were willing to pay monthly rent of $2,500.00. Defendant acknowledged on that date that the potential new tenants told him that $2,500.00 per month was what they were willing to pay. Defendant claims that he told Plaintiff to show him the lease that these new tenants were willing to

sign showing the rent to be $2,500.00 per month. Defendant further claims that he may have considered paying $2,500.00 per month had he been shown the lease as he requested. Since he was never shown this lease, he never really considered whether or not he would pay that amount. Defendant testified that on June 27, 2000, he received the letter sent to him by Plaintiff's counsel putting him on notice to vacate the premises by August 1st. Defendant continued to pay $1,600.00 per month in rent from March through July 2000. Defendant stated that when he personally delivered the August rent, Plaintiff refused to accept it.

On August 1, 2000, Plaintiff filed a detainer warrant in the Monroe County General Sessions Court. Plaintiff claimed that after the five-year lease expired, a month-to-month tenancy was created, and he was, therefore, entitled to possession of the property. Defendant claimed, however, that he was a holdover tenant and was entitled to possession of the property under a year-to-year tenancy. The General Sessions Court agreed with Plaintiff, and entered an appropriate order granting Plaintiff possession of the property. Defendant then filed a Petition for Writ of Certiorari and Supersedeas to the Monroe County Circuit Court. The Circuit Court issued the Writ upon Defendant securing a $2,500.00 bond. After a trial on the merits, the Circuit Court made the following findings of fact which were incorporated into its Judgment:

> I'm of the opinion that any law which would create a year to year tenancy is not applicable to this case. The landlord made it clear in December that a new rental amount was on the way. There's just no question about that. And the parties are in agreement with respect to that. In fact, I find very little … disagreement with respect to what was stated between the parties.

> You have two honorable people. They were – and had a long term rental arrangement. But the landlord had become convinced that the – his property had a greater rental value than he was receiving. He put his tenant on notice. He allowed the tenant, in effect, to have the option. As soon as he was able to establish what he could get for his property, the tenant had the first option to pay that rental amount and have the same agreement.

> Then it was also made clear that the tenant could remain only until the new tenants were ready to move in. That was also pretty clear. And I think it was understood by the parties. Which means that there was an agreement and it was clearly for less than one year. Because everyone knew that these new prospective tenants were going to be ready to move in sometime before a year would be up, that only leaves a month to month. It certainly leaves a tenancy that was less that a year. There's just no doubt about that.

The landlord then gave good notice in June. Stated exactly when the premises were needed as of August the 1st. So therefore, the judgment of the General Sessions Court is affirmed in all respects and the case will be remanded to that court for execution of the judgment.

Defendant appealed the judgment of the Circuit Court. One week after filing the Notice of Appeal, Defendant vacated the premises at issue and surrendered possession to Plaintiff. On appeal, Defendant argues that subsequent to the expiration of the five-year lease, he became a holdover tenant and was entitled to possession of the property for a year-to-year period. Plaintiff argues that since Defendant surrendered possession of the property, there is no justiciable controversy and the appeal should be dismissed because it is now moot.[2] Alternatively, Plaintiff argues that the decision of the Circuit Court should be affirmed.

## Discussion

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

With regard to any factual conclusions made by the Circuit Court regarding what transpired between the parties, these conclusions are based in large part on witness credibility. The Circuit Court had the opportunity to observe both parties, as well as their manner and demeanor. The Circuit Court's factual determination involving witness credibility will be given great weight on appeal. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 448 (Tenn. Ct. App. 1991)(citing *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959)). As recently noted by this Court in *Rice v. Rice*, 983 S.W.2d 680, 682 (Tenn. Ct. App. 1998):

> [O]n an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary.

---

[2] Plaintiff previously filed a Motion to Dismiss with this Court claiming that the appeal became moot once Defendant surrendered possession of the premises one week after filing the Notice of Appeal. Defendant denied the appeal was moot, indicating that he may seek damages for being wrongfully dispossessed of the property by Plaintiff. Similarly, in the Circuit Court Plaintiff unsuccessfully attempted to amend the detainer warrant to seek unpaid rent, and indicated at oral argument that an action for unpaid rent may be forthcoming. We denied the Motion to Dismiss and will not address it again in this opinion, but rather will decide the appeal on its merits.

In support of his argument that a new year-to-year tenancy was created, Defendant primarily relies on the following language in *Smith v. Holt*, 29 Tenn. App. 31, 193 S.W.2d 100 (1945):

> The effect of defendant's holding over and [lessor's] continued acceptance of the rent was to create a periodic tenancy of at least from month to month. In such cases of holding over, if the original tenancy was for a year or more, the new or holdover tenancy is from year to year; if the original term was for less than a year, as a month or a quarter, the new tenancy is presumably a periodic tenancy measured by such a period.

*Smith*, 29 Tenn. App. at 35, 193 S.W.2d at 101, 102. In *Smith*, the property was leased for an eleven month period beginning in 1938. After the expiration of the lease, the lessees held over, paying the same rent, until 1944. On August 10, 1944, the property was deeded to the plaintiff who, seven days later, gave notice to the lessees to vacate the premises.

The facts in *Smith* are readily distinguishable. In the present case, Plaintiff testified he told Defendant before the lease expired that he had new tenants who were willing to pay $2,500.00 per month, but he would give Defendant the option of leasing the property at that price. If Defendant would not pay that price, the new tenants would be ready to take over in July or August. While Defendant denies this conversation took place, the Circuit Court nonetheless credited the testimony of Plaintiff when it found: (1) that Plaintiff made it "clear" that the a new rental amount was going to be determined; (2) when Defendant would not pay that amount, it was "made clear" that Defendant could remain "only until the new tenants were ready to move in"; and (3) "that there was an agreement and it was clearly for less than one year. Because everyone knew that these new prospective tenants were going to be ready to move in sometime before a year would be up, that only leaves a month to month."

A case much more instructive than *Smith* is *Seward v. Garner*, 19 Tenn. App. 440, 89 S.W.2d 770 (1935). *Seward* involved a one year lease which had been extended for a second year. In *Seward*, however, it was the lessee who attempted to show that a new agreement had been reached. The lessor denied a new agreement, arguing that the parties had agreed that the terms of the original one-year lease would remain the same for the next year. Proof supporting both positions was elicited at trial. The trial court agreed with the lessor, concluding that the contention of the lessee that the contract had been modified was "not sustained by the proof." 19 Tenn. App. at 443, 89 S.W.2d at 772. In affirming the trial court, this Court stated:

> If a tenant holds over with the consent or acquiescence of the landlord *and without a new agreement*, he becomes a tenant from year to year. 35 C.J. 1101, § 295.

> "The creation of a tenancy from year to year by implication from holding over with consent and acquiescence of the landlord may be rebutted by showing that the holding over is in some other character or for some other purpose, but proof of a contrary intention on the part of the tenant alone is not sufficient for this purpose." 35 C.J. 1104 § 299.

*Seward*, 19 Tenn. App. at 444-45, 89 S.W.2d at 773 (emphasis added). In the present case, the Circuit Court made a factual determination as to whether or not a new agreement had been made with the terms being as alleged by Plaintiff. After hearing the testimony of both parties, the Circuit Court found that the proof supported Plaintiff's position. Since a new agreement had been reached by the parties, the Circuit Court correctly concluded that "any law which would create a year to year tenancy is not applicable to this case."

Defendant also relies on *Hayes v. Schweikart's Upholstering Co.*, 55 Tenn. App. 442, 402 S.W.2d 472 (1965). In *Hayes*, this Court affirmed the following jury instruction given by the trial court:

> Where a lessee enters into possession of property under a lease for one or more years, and continues to remain in possession of the property after the expiration of the lease, with no agreement with his landlord as to the term of any renewal of his lease, the law construes the lessee to have leased the property from year to year; and for either party to cancel the tenancy, notice must be given to the other party at least six months before the end of a given year.

*Hayes*, 55 Tenn. App. at 455, 456, 402 S.W.2d at 479. *Hayes* actually supports Plaintiff inasmuch as the Circuit Court in the present case expressly found that there was a new agreement between the parties as to the terms and duration of the new month-to-month tenancy.

Upon reviewing the entire record in this case, we cannot say that the evidence preponderates against the Circuit Court's findings that the parties reached a new agreement for a month-to-month lease, that proper notice was given, and, therefore, that Plaintiff was entitled to immediate possession. We find no error in the Circuit Court's judgment.

## Conclusion

The judgment of the Circuit Court is affirmed. This case is remanded to the Circuit Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of costs below. Costs of this appeal are taxed to the Appellants, Larry and Carol Moses, and their surety.

_____
D. MICHAEL SWINEY, JUDGE