# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 15, 2002 Session

## DEBORAH SMITH, ET AL. v. TACO BELL CORPORATION

**Appeal from the Circuit Court for Knox County**
**No. 3-342-95     Wheeler Rosenbalm, Judge**

**FILED MAY 3, 2002**

**No. E2001-01796-COA-R3-CV**

The Trial Court awarded Deborah Smith ("Plaintiff") $250,000 for injuries received as a result of her fall at Taco Bell. Plaintiff's husband was awarded $10,000 for his loss of consortium claim. On appeal, Taco Bell Corporation ("Defendant") contends the Trial Court committed reversible error by failing to rule at trial on Defendant's objections made during the depositions of the two primary treating physicians. Defendant also claims the medical proof was insufficient to establish a causal connection between Plaintiff's fall at Taco Bell and her medical condition. We affirm.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR. J., joined.

Clint J. Woodfin, Knoxville, Tennessee, for the Appellant Taco Bell Corporation.

Ronald E. Cunningham and Kenneth W. Holbert, Knoxville, Tennessee, for the Appellees Deborah and Alan Smith.

---

[1] Oral argument was heard in this case on April 15, 2002, at Knoxville Catholic High School, as part of this Court's C.A.S.E. (Court of Appeals Affecting Student Education) project.

# OPINION

## Background

Plaintiff, age 41 at the time of trial, claims she was seriously injured when she fell at a Taco Bell restaurant in 1994. Plaintiff was attempting to refill her drink when she stepped onto a recently mopped section of the floor where she slipped and fell. According to Plaintiff, there were no warning signs posted alerting her to the wet condition of the floor. Plaintiff claims to have suffered injuries to her neck and back resulting from the fall. Plaintiff's husband sued for loss of consortium. Defendant filed an answer essentially denying the pertinent allegations of the complaint.

After a bench trial, the Trial Court found Defendant to be negligent and 100% responsible for the accident for comparative fault purposes. The Trial Court concluded as follows:

> [T]he fault or proximate negligence of the defendant caused injury to Mrs. Smith's thoracic or mid back region and caused injury particularly to the region of her cervical spine identified as C5 and 6, and has caused her to suffer from an increase in headaches which have been characterized in the record as migraine headaches, perhaps the most severe of headaches experienced by the human being; and that as a result of these injuries together with some aggravation of her preexisting condition that grew out of a previous automobile accident, the plaintiff has been caused to incur considerable expense for examination and treatment of those injuries and under the medical proof in the record, the expert testimony, the plaintiff will incur expenses in the future.

> The experts offered by the plaintiff estimate that the permanent impairment that the plaintiff has suffered because of these injuries will approach nine or ten percent to the body as a whole. And so, it is obvious to the Court, the Court concludes that the plaintiff has suffered some rather severe injuries, although the Court is constrained to conclude that these injuries are not life-threatening or totally disabling. Certainly the extent to which they are going to interfere with the plaintiff's future life has not been established to that degree of certainty where there's just absolutely no question about them.

> But certainly the evidence rises to the level of being more than merely conjectural, and it's clear here that more likely than not the plaintiff is going to continue to suffer from discomfort and some limitation in her activities and will require future medical treatment

in the way of drugs and perhaps some physical therapy for treatment of her ongoing condition.

The difficult part of course is to place a figure on all of these things collectively which will fairly and adequately compensate the plaintiff for her injuries. And after having examined all of these elements of damage and considering very carefully the expert opinion testimony of the doctors that have been submitted in this case and attempting to make an analysis of what weight and credit to give to various parts of that opinion testimony, the Court concludes that the plaintiff Deborah Smith is entitled to recover from the defendant Taco Bell Corporation the sum of two hundred fifty thousand dollars.

The Trial Court also awarded Mr. Smith $10,000 for his loss of consortium claim, and entered judgment in favor of both Mrs. and Mr. Smith. Defendant does not appeal the Trial Court's determination that it was negligent and fully at fault for Plaintiff's fall. The two issues on appeal concern the Trial Court's failure at trial to rule on various objections made during the depositions of the two primary treating physicians, and whether the evidence preponderates against the Trial Court's conclusion that Plaintiff's fall at Taco Bell was the proximate cause of her medical condition. Accordingly, we will set forth the testimony of the witnesses only as it pertains to these issues.

Plaintiff testified she, her husband, and two of her daughters were eating lunch at Taco Bell. Plaintiff finished eating her lunch and got up to refill her drink. Plaintiff hit a "very slick spot" and both of her feet "just went out from under" her, causing her head to hit a table and her neck to hit the back of a chair. Plaintiff then "hit the floor just totally flat on my back." Plaintiff immediately experienced a strong pain and burning sensation at the back of her head. After her husband helped her off the floor, Plaintiff went to Fort Sanders Hospital where x-rays were taken. She subsequently came under the care of Dr. Degnan ("Degnan"). Degnan had treated Plaintiff in the past for neck problems arising from an automobile accident in 1992. Approximately nine months prior to the fall at Taco Bell, Plaintiff had stopped treatment for the neck injury from the automobile accident because the pain had "gotten better." Plaintiff admitted having bad headaches after the automobile accident, but stated she would take Excedrin and did not need to take any prescription medication for these headaches. The headaches had "pretty much subsided" by the time she fell at Taco Bell. Plaintiff was assessed a four percent impairment as a result of the automobile accident in 1992, but was not taking any medication other than Excedrin for her headaches and a muscle relaxant on an as needed basis for her neck. Plaintiff testified her neck pain was much worse and more constant after the fall at Taco Bell in 1994. "[E]verything I would do would aggravate my neck. Sitting, standing. Very little things that I do that does not aggravate my neck." Her headaches also became more frequent and more intense. After her fall at Taco Bell, her headaches sometimes forced her to go to bed for two to three days at a time, and she would become nauseated. Plaintiff testified she never had a migraine headache prior to her fall at Taco Bell. Plaintiff also began experiencing pain in her upper back for the first time after her fall. She also injured her lower back

and a finger in the fall, but these injuries resolved over time. Plaintiff saw Degnan approximately 27 times and received multiple cortisone shots. In 1997, Plaintiff came under the care of Dr. Scariano ("Scariano"). Plaintiff testified the medication she currently is taking for her headaches costs $171 per month, and the medication for her neck costs approximately $200 per month. She has been taking this medication for two and one-half to three years. Plaintiff claimed $6,200 in lost wages as a result of the accident at Taco Bell.

Degnan's deposition was offered as proof as trial. Degnan first treated Plaintiff in 1993 following an automobile accident. Plaintiff, at that time, complained of pain in her neck, left arm, and also complained of headaches. An MRI was performed which showed a posterior bulging disc at the C6 and C7 level. Degnan opined Plaintiff suffered a four percent permanent medical impairment as a result of the automobile accident. When receiving treatment following the automobile accident, Plaintiff did not describe the severity of the headaches, nor did she complain of pain in her lower back or thoracic area. Degnan began treating Plaintiff again in 1994 after her fall at Taco Bell. Plaintiff told Degnan she fell and struck her head and "it was quite a sever impact." Although Degnan's notes indicate Plaintiff's head hit a garbage can, he stated he thought she actually hit a table. In any event, Plaintiff complained of low back pain and there was some muscle spasm. In October of 1994, Plaintiff had complaints of pain in the cervical area of her spine. In November, Plaintiff was distressed and complained of problems with her neck, shoulder, and severe migraine headaches. Another MRI was performed which revealed a ruptured disc at the C5 and C6 level. Degnan further stated he concluded within a reasonable degree of medical certainty that the fall was responsible for the low back pain as well, assuming Plaintiff was asymptomatic as to lower back problems prior to the fall.

Degnan referred Plaintiff to neurologists Dr. Thomas and Dr. Scariano. He also referred her to physical therapy. When asked if, within a reasonable degree of medical certainty, Plaintiff received an injury as a result of the fall at Taco Bell, Degnan responded that he would attribute the injury to the thoracic and lumbar areas of the back and the headaches to the fall, assuming she was asymptomatic prior to the fall. Later during cross-examination, Degnan stated he could not conclude within a reasonable degree of medical certainty the lumbar injury was related to the fall. Degnan stated Plaintiff would continue to incur medication expenses if her symptoms did not improve. Degnan testified Plaintiff incurred $29,195.92 in medical bills as a result of her fall at Taco Bell. These bills were reasonable and necessary and included fees for physicians and other health care providers to whom Degnan referred Plaintiff. On cross-examination, Degnan admitted he could not "vouch" for the reasonableness and necessity of medical care Plaintiff received after he stopped treating her. He also testified a cervical block was performed on Plaintiff after he stopped treating her. Although he referred Plaintiff to Scariano, he could not state precisely if the treatment Scariano provided was related to the fall at Taco Bell. Degnan admitted he referred Plaintiff for physical therapy, but, when asked about some of the specific bills, he could not state whether they were based on his referral or that of another physician. He could identify some of the referrals that were from him. Degnan admitted his conclusion Plaintiff's headaches were caused by the fall at Taco Bell was based on records from Dr. Thomas, but no mention was made in Dr. Thomas' report

-4-

of the incident at Taco Bell. Thus, Degnan eventually testified he could not state, based on Dr. Thomas' records, that the headaches were caused by the fall.

Scariano's deposition was offered as expert medical proof at trial. Plaintiff was referred to him for treatment by Degnan, and he began treating her in November of 1997. At first, Plaintiff was complaining of pain in her mid-back and Scariano eventually referred her to a pain control center. Plaintiff began to complain of migraine headaches. She was already taking medication prescribed by Degnan for migraine headaches. Scariano referred Plaintiff to Dr. Natelson for his opinion on whether Plaintiff was a candidate for a spinal cord stimulator. He also referred Plaintiff to Dr. Finelli who concluded there was no cervical lesion and recommended a chronic pain treatment clinic. Scariano indicated Plaintiff's medication for migraines and back pain would cost about $400.00 per month. His diagnosis was "[o]ngoing posttraumatic migraine headaches plus persistent cervical and upper mid thoracic pain after injury." Scariano stated his opinion, based on a reasonable degree of medical certainty, that the conditions Plaintiff complained of were related to her fall at Taco Bell and her injuries were permanent. Utilizing the American Medical Association's combined tables, he assessed a 9% impairment to Plaintiff's body as a whole. He instructed Plaintiff to avoid twisting and turning her neck. He believed she could do light to medium manual labor. She would need the migraine and back medication for the "indefinite future." According to Scariano, head trauma is a very common cause of migraine headaches. Scariano testified, over objection, that Dr. Natelson's treatment and related treatment was reasonable and necessary, that he was familiar with the charges for similar services, and the medical bills from Dr. Natelson were reasonable. He also stated the costs for the MRI's were reasonable and necessary and in accordance with the customary charges for those services. Similar responses were received with regard to medical services and costs from the pain control center. Scariano's total charges for medical treatment of Plaintiff were $3,085.69. Scariano was not aware Plaintiff had headaches prior to the fall at Taco Bell. If he had been aware of this, it would have had some bearing on his opinion as to the cause of the migraine headaches, but not the back injury.

When the depositions of the treating physicians were tendered to the Trial Court as medical proof, counsel for Defendant informed the Trial Court there were "many" objections made during the course of the depositions and counsel wanted to "reaffirm" them. The Trial Court indicated it would read the depositions and objections, and the parties and court would "deal with those in the course of argument and if the objection is sustained I'll exclude that from my consideration." After hearing the live witnesses, the Trial Court read the depositions of Degnan and Scariano and returned to the courtroom for closing arguments. Defendant's counsel did not ask for a ruling on the objections made during the medical depositions and the objections were not discussed during closing arguments. Instead, Defendant's counsel attacked the credibility of Degnan and Scariano and argued to the Court why the testimony of these physicians should not be credited and why Plaintiff's medical condition was attributable to the automobile accident in 1992, as opposed to the fall at Taco Bell in 1994. After hearing closing arguments, the Trial Court rendered its judgment. Defendant appeals.

**Discussion**

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Brooks v. Brooks,* 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo,* without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn. 1999).

We first address Defendant's argument that the Trial Court committed reversible error by not ruling at trial on the objections made during the medical depositions of Degnan and Scariano. On appeal, Defendant does not direct this Court to any particular objection or group of objections which it claims involved a substantial right which more probably than not affected the Trial Court's judgment or resulted in prejudice. *See* Tenn. R. App. P. 36(b). Rather, Defendant makes the extremely broad assertion of error because none of the numerous objections were ruled on at trial.

Tenn. R. App. P. 36(a) provides, in relevant part: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." After counsel for Defendant "reaffirmed" the deposition objections at trial, the Trial Court stated it would read the depositions and accompanying objections and the parties and court would then "deal with those in the course of argument and if the objection is sustained I'll exclude that from my consideration." During the course of argument, no mention of the objections was made by Defendant. Rather, Defendant simply attacked the credibility and the weight to be given to the testimony of Degnan and Scariano. The Trial Court never again was asked to rule on the objections. The Trial Court may very well have thought many of the objections were valid and excluded certain testimony when making its final ruling, but we have no way of knowing from this record if this did or did not occur. We conclude Defendant's failure to request a ruling on the objections immediately prior to or during the final argument constituted a failure "to take whatever action was reasonably available to prevent or nullify the harmful effect of an error", if in fact there was any error. In accordance with Rule 36(a), we decline to grant any relief on this issue.

The remaining issue is Defendant's claim the evidence preponderates against the Trial Court's conclusion that Plaintiff's fall at Taco Bell was the proximate cause of her medical condition. The medical proof certainly is not a model of clarity. Defendant quite properly and effectively brought to the Trial Court's attention several inconsistencies in the testimony and other points which could impact the *weight* to be given to this medical testimony. We cannot, however, view Degnan's testimony in isolation of Scariano's, or vice versa. We must examine their combined testimony with that of Plaintiff in order to determine if the preponderance of the evidence is against the Trial Court's findings. Either one or both of these physicians attribute Plaintiff's various medical problems to her fall at Taco Bell. The effect of Plaintiff's pre-existing medical condition, if any, was a factual determination to be made by the Trial Court after evaluating the proof. This is exactly what the Trial Court did. The medical proof was offered by way of deposition testimony, thereby depriving the Trial Court of the opportunity to observe the manner and demeanor of those witnesses

for purposes of evaluating credibility. However, our standard of review with regard to the Trial Court's factual conclusions nevertheless remains the same, i.e. whether the preponderance of the evidence is against the Trial Court's findings. Although Degnan and Scariano did not testify live, Plaintiff certainly did, and the Trial Court was able to evaluate her credibility. After a complete review of the evidence set forth at length above, we conclude the preponderance of the evidence is not contrary to the Trial Court's finding that Plaintiff's fall at Taco Bell was the proximate cause of her injury and resulting medical condition. *See* Tenn. Rule App. P. 13(d).

On appeal, Plaintiffs seek costs and attorney fees, asserting Defendant's appeal is frivolous. We do not believe the appeal to be frivolous and decline to so hold.

### **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Taco Bell Corporation, and its surety.

_____
D. MICHAEL SWINEY, JUDGE