IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 15, 2004 Session

## CRYSTAL JILL CUNNINGHAM v. JOHN W. GILL

**Appeal from the Chancery Court for Overton County**
**No. 02-102    Vernon Neal, Chancellor**

---

**No. M2003-01374-COA-R3-CV - Filed - July 20, 2004**

---

Plaintiff filed a complaint seeking a reversion of Defendant's mineral interests in Plaintiff's land, alleging that Defendant had abandoned the interests. The trial court held that the mineral interests had not been abandoned because Defendant had made use of the mineral interests by paying taxes on the mineral interests.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM  B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

James Reed Brown, Byrdstown, Tennessee, for the appellant, Crystal Jill Cunningham.

James Frank Wilson, Wartburg, Tennessee, for the appellee, John W. Gill.

### OPINION

This is an action by Crystal Jill Cunningham (Plaintiff), the surface interest owner of real property,[1] against John W. Gill (Defendant), who is the owner of record of mineral interests in two parcels of Plaintiff's property.[2]  In her complaint, Plaintiff seeks a reversion of Defendant's mineral interests in Plaintiff's property, alleging they have been abandoned.

Plaintiff acquired title to the property from her father, C.R. Cunningham, by deed dated February 1, 1999.  The deed conveying the property from C.R. Cunningham to Plaintiff references the reservation of Defendant's mineral interests.

---

[1] Plaintiff's real property is of record in Warranty Deed Book 285, Page 315, Register's Office of Overton County, Tennessee, and shown on Tax Map 128, Parcels 8, 9 and 10; Tax Map 121, Parcel 4.01 and Tax Map 122, Parcels 1.01, 2 and 2.04.

[2] The Tax Map and Parcel numbers of the surface above Defendant's mineral interests are Tax Map 128, Parcels 8 and 9.

Defendant inherited the mineral interests from his father, John Gill, Sr., in 1984. The elder Gill had expressly reserved the mineral interests in deeds dated February 16, 1942 and June 12, 1950.

Taxes have been paid on the mineral interests by the Gills since 1942. Furthermore, John Gill, Sr. had entered into several mineral leases. The most recent lease was entered in 1976 for a five year term. Thus, it expired in 1981.

On January 14, 2002, Plaintiff filed a Complaint for Claim of Abandoned Mineral Interest pursuant to Tenn. Code Ann. § 66-5-108, asserting that Defendant's mineral interests had not been used for at least twenty years, that Defendant had failed to file the statutory statement of claim, and thus Defendant's mineral interests had been abandoned and had reverted to Plaintiff. Defendant filed an Answer and Motion to Dismiss the Complaint, stating that his mineral interests had not been abandoned for the taxes on the mineral interests had consistently been paid.[3]

Plaintiff filed an Amended Complaint on August 16, 2002, to which Defendant filed an Amended Answer. On September 9, 2002, Defendant recorded his Statement of Claim in the office of the registrar for Overton County.

Following an evidentiary hearing, the trial court dismissed Plaintiff's complaint and held that Defendant and his predecessor in interest, John Gill, Sr., had made use of the mineral interests by paying taxes on the mineral interests. The trial court found that Defendant was paying taxes when the statute went into effect on July 1, 1987 and that Defendant had until July 1, 2007, twenty years from the effective date of Tenn. Code Ann. §66-5-108, to file his statement of claim. The judgment reads in pertinent part:

> It is evident from the proof in this case that at the time of passage of the statute, the defendant and his father had held unused interests (in addition to payment of taxes which constitutes a use under the statute) for less than twenty years and in fact at the time of the passage of T.C.A. § 66-5-108, it had only been six years since actual use had been made of the mineral interest. Since the mineral interest had been unused for less than twenty years, the holder of the subsurface rights, the defendant herein, has twenty years from and after July 1, 1987, within which to file a statement as required by T.C.A. § 66-5-108(5)(b)(2).[4]

> Aside from actual use of the mineral interest by virtue of the lease above referred to, the Court further finds and holds that the defendant has used the mineral

---

[3] Defendant also argued that the factual predicate for which Tenn. Code Ann. § 66-5-108 was enacted was not present. Purposes for which Tenn. Code Ann. § 66-5-108 was enacted include: to ensure that mineral interests were taxed and generating revenues, to assure that the surface owners could discover the identity of the mineral interest owners and to prevent uncertainties in title. We find this argument is without merit. Moreover, it is moot due to our holding. Accordingly, it is not discussed.

[4] The correct citation is Tenn. Code Ann. § 66-5-108(d)(1).

interests as defined in T.C.A. § 66-5-108(5)(b)(2)[5] by virtue of the fact that both he and his predecessor in interest have paid taxes on the mineral interests from the date of the severance of such interest through the date of the filing of plaintiff's complaint.

. . . .

T.C.A. §67-5-809(b)[6] provides that any mineral interest owner failing to identify the location of the mineral interest according to §67-5-804 shall not claim payment of taxes as a use of mineral interest as provided in Title 66, Chapter 5. The law relative to the assessment of mineral interests is contained in the same Public Act as that providing for the preservation, extinguishment and reservation of mineral interest, namely Chapter 282 of the Public Acts 1987 which became effective on July 1, 1987. The Court finds that the defendant was using the mineral interest by paying taxes on the same at the time Chapter 282 of the Public Acts of 1987 became effective.

The defendant was paying taxes on his interest at the time Chapter 282 (T.C.A. §66-5-108) became effective. Further, T.C.A. §67-5-804 has been substantially complied with by defendant and any error in the information used for assessment was that of the tax assessor and not the owners of the mineral interest.

Thereafter, Plaintiff filed a motion to reconsider, or in the alternative, for a new trial. The trial court denied the motion, and Plaintiff filed this appeal.

Plaintiff asserts that the trial court erred in ruling that Defendant's mineral interests had not lapsed per Tenn. Code Ann. § 66-5-108 because those interests had not been used within twenty years. Specifically, Plaintiff contends that Defendant's mineral interests were not properly identified to the Assessor of Property, thereby preventing the payment of taxes from being considered a "use" of the mineral interests as provided by Tenn. Code Ann. § 67-5-804 and § 67-5-809. Defendant argues that he has until 2007, twenty years from the statute's effective date, to file his statement of claim, because he has consistently paid taxes on the mineral rights and satisfied the identification requirements of Tenn. Code Ann. § 67-5-804.

An appellate court's review of a trial court's findings of fact is *de novo* upon the record of the trial court accompanied by a presumption of the correctness of those findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

Tenn. Code Ann. § 66-5-108, the statute upon which Plaintiff bases her complaint, became effective on July 1, 1987. The statute provides that any mineral interest which is not used for twenty

---

[5]The correct citation is Tenn. Code Ann. § 66-5-108(b)(3).

[6]The correct citation is Tenn. Code Ann. § 67-5-809(d).

years reverts to the owner of the surface estate unless the mineral interest owner files a statement of claim "prior to the end of the twenty-year period set forth in subsection (c) or within three (3) years after July 1, 1987, whichever is later." Tenn. Code Ann. § 66-5-108(d)(1). The statute further provides that the statement of claim shall be filed with the register of deeds in the county where the land is located and shall contain the name and address of the owner of the mineral interest and shall cite the tax maps and parcel numbers for the owner(s) of the surface rights above the mineral estate and a reference to the instrument under which the mineral interest is claimed. Tenn. Code Ann. § 66-5-108(d)(2) and (3). The statute also instructs that "*a mineral interest shall be deemed to be used* when there are any minerals being produced thereunder or when operations are being conducted thereon . . . or when rentals or royalties are being paid to the owner . . . or *when taxes are paid on such mineral interest. . . .*" Tenn. Code Ann. § 66-5-108(b)(3) (emphasis added).

Tenn. Code Ann. § 67-5-809(d), however, provides that a mineral interest owner who fails to identify the location of the mineral interests pursuant to Tenn. Code Ann. § 67-5-804 shall not claim payment of taxes as a use of mineral interests. Tenn. Code. Ann. § 67-5-804(b) provides three ways in which property may be sufficiently identified: by map and parcel number of the surface owner and the mineral estate; by providing the property assessor with maps showing the location of the mineral interests in relation to the surface estate; or by providing the property assessor with names of the surface owners and enough additional information so that the mineral interests may be located on the property assessor's maps.

Plaintiff puts great emphasis on this court's ruling in *West v. Wilson*, No. 03A01-9409-CH-00348, 1995 WL 96796 (Tenn. Ct. App. March 9, 1995). *West* dealt with mineral interests and whether they had been abandoned. Though factually different, that action, like the case at bar, was commenced pursuant to Tenn. Code Ann. § 66-5-108.

> Under the statute, there are two basic classifications of owners who hold sub-surface estates in property: (1) those who, by themselves or through those under whom they claim rights, have owned unused mineral or sub-surface rights for more than twenty years and (2) those who, by themselves or through those under whom they claim, have owned unused mineral or sub-surface rights for less then [sic] twenty years.
>
> Those who have held unused sub-surface rights for more than twenty years are given three years from the effective date of passage of the statute to file a "Statement of claim," identify themselves, give their addresses and identify the property in which they claim an interest and the instrument under which their claim is made. Those who have held their interest for less than twenty years must file their statement of claim within twenty years or within three years after the effective date of the statute, whichever is later.

*Id.* at *3. However, unlike the case at bar, the mineral interest owners in *West* conceded that the mineral interest had never been used -- never mined, never leased and never taxed.

Based upon the foregoing, it is evident the language in the statute means that unused mineral interests will expire unless a statement of claim is filed within twenty years of the last "use," as that term is defined by the statute, or three years from the effective date of the statute, whichever is later.

Here, it is undisputed that the mineral interests were leased on several occasions, the last of which expired in 1981. It is also undisputed that Defendant paid taxes from the grant of rights through the date the statute took effect in 1987; however, what is disputed is whether the mineral interests were sufficiently identified in the Office of the Assessor of Property. The latter is a condition precedent to claiming the payment of taxes as a statutory "use" of the mineral interests. If the last "use" was the lease of mineral interests, then the statutory twenty-year grace period began to run in 1981 when the last lease expired. If that is the case, the twenty-year grace period expired in 2001. However, if Defendant's payment of taxes satisfies the statute, which is contingent upon the location of the mineral interests being sufficiently identified in the Office of the Assessor of Property, then Defendant has until July 1, 2007 to file his statement of claim to preserve his rights in those interests.

Defendant testified that he paid the taxes through 1987, and thereafter. The tax bills, however, contained map and parcel numbers of the courthouse, not those of the property. The evidence established that this was not a mistake but a practice the Office of the Assessor of Property for Overton County had employed for decades. The Assessor of Property for Overton County testified that all mineral interests in Overton County are given (assessed) the courthouse map and parcel numbers. He explained that this had been the practice of his predecessor and he followed the practice. Moreover, he testified that there is nothing on the face of the tax card to indicate to the property owner that the map and parcel numbers are not those of the location of the mineral interests. Following an obviously confusing line of questions and answers, the Chancellor further questioned the Assessor of Property to clarify the practice:

> THE COURT:    If I'm understanding you correctly, this is the way that all . . . mineral interests are assessed?
> THE WITNESS:   Yes, sir.
> THE COURT:   Just assessed to the courthouse?
> THE WITNESS:   Yes.
> THE COURT:   So you say that . . . just to say then that the owner or the people who have the reservation that never furnished your office the information, then if I'm understanding you correctly, that's not correct. It was furnished by way of the deed coming to your office?
> THE WITNESS:   At one time or another it was – it would have been taxed because of the deed.
> THE COURT:   I mean, there would have been the information and who the owner was and the description and everything, correct?
> THE WITNESS:   Yes.

The Assessor of Property testified that "at one time or another," the information regarding the reservation of Defendant's mineral interests was furnished to his office, via the deed, and was

therefore placed on the tax roll. Why the Office of the Assessor of Property for Overton County employs the practice of substituting the location (map and parcel numbers) of the courthouse for that of the mineral interests to "assess" the mineral interests of the tax payer remains a mystery. What is apparent, however, is that Defendant and/or his predecessor directly or indirectly provided the statutorily required information to the Office of the Assessor of Property as required by the statute, though the Office of the Assessor of Property chose to substitute that information with the map and parcel numbers of the courthouse.

There is also circumstantial evidence that the Office of the Assessor of Property deemed the information it had concerning the mineral interests to be sufficient and in compliance with Tenn. Code Ann. § 67-5-804. Defendant was named in a delinquent tax suit in 1989 that pertained to the mineral interests at issue. The statute provides, "Any mineral interest owner who, although currently paying taxes on a mineral interest assessment, fails to identify the location of that interest as required in § 67-5-804 *shall* be subject to penalty and interest. A penalty of ten percent (10%) *shall be levied* on the current assessment of that mineral interest." Tenn. Code Ann. § 67-5-809(c). (emphasis added) In that action it was never asserted that there was any problem with the assessment of property or the way in which his mineral interests were identified. Moreover, Defendant was not assessed the ten percent penalty mandated by Tenn. Code Ann. § 67-5-809(c).[7]

Based upon the facts at issue, Defendant had twenty years from the last "use" within which to file his statement of claim to prevent the mineral interests from reverting to Plaintiff. It is undisputed that Defendant paid taxes on his mineral interests through July 1, 1987. The Chancellor found that the mineral interests were sufficiently identified and on file with the Office of the Assessor of Property to satisfy Tenn. Code Ann. § 66-5-804(b). We agree.

Therefore, Defendant had until July 1, 2007, twenty years from the effective date of the statute, to file his statement of claim. Since Defendant filed his statement of claim on September 9, 2002, his rights to the mineral interests at issue did not revert to Plaintiff.

Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Appellant, Crystal J. Cunningham.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[7]The taxes had consistently been paid on these mineral interests since they were reserved. However Defendant moved in 1987 and was named in this delinquent tax suit in 1989 due to his failure to maintain a proper mailing address, resulting in the property taxes not being paid in a timely manner. Defendant promptly resolved the matter by paying the overdue taxes and correcting the mailing address.